## Adams, etc. v. Commonwealth.

(Decided January 8, 1915.)

Appeal from Rockcastle Circuit Court.

1. **Nuisance—Adulterous Relation—Acts Proving Existence of—How Shown.**—Where, with the knowledge generally of other people of.

the neighborhood, a man and woman not legally sustaining to each other the relation of husband and wife, and conclusively shown to be of bad reputation for chastity, together occupied the same house for seven months, and, according to the evidence, acted at times in such a lewd and vulgar manner as to indicate that they were living in adultery, such conduct constituted a common or public nuisance in the meaning of the law.

2. Nuisance—What Will Constitute.—A nuisance per se is any act, or omission or use of property or thing, which is of itself hurtful to the health, tranquility or morals, or outrages the decency of the community. Open and gross lewdness, or whatever openly outrages decency and is injurious to public morals is a misdemeanor and indictable at common law. Thus the living together of a man and woman unmarried, which is generally known throughout the neighborhood, is sufficient to constitute open and notorious lewdness, without proving it to have been in a street or under the immediate observation of strangers. In such case outward indecency is not a necessary element.

C. C. WILLIAMS for appellants.

JAMES GARNETT, Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellants, Jennie Adams and John Baker, were jointly indicted in the court below for creating and maintaining a common public nuisance. They were jointly tried and by the verdict of the jury both were found guilty and their punishment fixed at a fine of $100.00 each. They were refused a new trial and have appealed from the judgment entered upon the verdict.

Their first complaint is that the indictment is fatally defective because it fails to charge that the acts constituting the alleged nuisance were "openly, notoriously and scandalously" committed. It is true that the words quoted do not appear in the indictment, but the acts constituting the nuisance are specifically set out in the indictment; it being in substance alleged therein that appellants, though not husband and wife, did for several months and within a year before the finding of the indictment unlawfully cohabit and live together in adulterous relations in a certain house in the town of Mt. Vernon by sleeping in and occupying the same room and bed in the house and "acting in a lewd and vulgar manner, to the common public nuisance and scandal; and to the detriment of good morals and religion and to those persons then and there residing in the neighborhood

and passing and repassing, and having a right to pass and reside'' therein. Obviously the language of the indictment charges a public offense ''in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case.'' If the acts alleged as constituting the offense were committed by appellants as charged and with the knowledge of the persons ''residing in the neighborhood and passing, repassing and having a right to pass and reside'' therein, as further alleged, they must have been ''openly'' and ''notoriously'' committed, and that such was their character is as fully stated as if the words openly and notoriously had been used. We concur in the conclusion of the trial court as to the sufficiency of the indictment; therefore, the demurrer thereto was properly overruled.

The evidence introduced for the Commonwealth manifests the following facts: That the appellant, Jennie Adams, is a widow who owns and occupies a residence in Mt. Vernon, and that at such times as the school of the town was in session some of her nieces lived with her; that the appellant, John Baker, is a married man who does not live with his wife or children; and that for seven or eight months before the finding of the indictment, he was seen at and in the home of Jennie Adams almost continuously, both day and night, his presence there being noticed by persons in the neighborhood late at night and at times early in the morning. He was frequently seen by one of the residents of the neighborhood to come out of Mrs. Adams' house early in the morning without his coat, bare-headed and with his hair uncombed, as though he had just gotten up; and, on one of these occasions, he went directly to the water closet, where he was shortly followed by Mrs. Adams, who went into the closet while he was there and remained with him for some time. On another occasion they were seen in her bedroom together at eleven o'clock at night, the upper part of Baker's body appearing at the time to be naked, and while thus together the light in the room was put out. According to all the evidence of the Commonwealth they lived together as man and wife and were seen on the premises and in the streets together. On yet another occasion a woman of the neighborhood saw

the appellants embrace each other while driving in a buggy on a highway. There were numerous other houses near that of appellant Adams, occupied by men, women and children, all of whom constantly saw the appellants, observed that they lived together as if they were husband and wife, and were greatly annoyed and outraged by their conduct and the relations maintained by them. In addition, it was proved by the Commonwealth that the reputation of each of the appellants for chastity and morality was bad.

On the other hand, the appellants each denied that there were illicit or improper relations between them; denied that they had embraced on the highway or been in the water closet together; or together at night in her bedroom, or at a time when the light was put out. The appellant Baker further denied that he was ever in a room at Mrs. Adams' house with his shirt off, but admitted that he sometimes had his top shirt off at her house. In attempted explanation of their intimacy and the conduct complained of by the residents of the neighborhood, appellants testified that Baker was employed to work for Mrs. Adams, which compelled him to spend much of his time at her house and about the premises, and that he did not sleep or spend the nights at her house. Other witnesses testified that Baker was often at work for Mrs. Adams; that he did some inside painting in the house; made for her a wagon bed and also gathered for her a crop of corn.

While the evidence fails to show any specific adulterous act between appellants or act of gross immorality or indecency, it did as a whole show the presence of the conditions that manifestly attend the existence of the adulterous relations charged in the indictment. In other words, persons so lacking in virtue as appellants are shown by the evidence to be, would not sustain toward each other the relations maintained by them for other than illicit or immoral purposes. As well argued by the Attorney General, the fact that a man and woman who are not married live together in a community and occupy the same house together, under the conditions shown by the evidence in this case, was enough to convince the jury of their guilt of the offense charged, without proof of outward indecency. The relations maintained by appellants could but offend the moral sense of the decent people to whom they were known. For these reasons the

acts and conduct of which they were shown to be guilty constituted such a public or common nuisance as they are charged by the indictment with maintaining. In Roberson's Criminal Law, Vol. 2, page 830, it is said:

"Open and gross lewdness, or whatever openly outrages decency and is injurious to public morals is a misdemeanor and indictable at common law. Thus the living together of a man and woman unmarried, which is generally known throughout the neighborhood, is sufficient to constitute open and notorious lewdness, without proving it to have been in a street or under the immediate observation of strangers."

In Bishop on Criminal Law, Vol. 1, Section 1087, in discussing bawdy houses as a nuisance, the author says:

"Outward indecency is not a necessary element. The allurement is as effective, or even more so, though no indecency or disorder is discernible from without."

In Ehrlich v. Commonwealth, 125 Ky., 746, we said:

"A nuisance *per se* is any act, or omission or use of property or thing, which is of itself hurtful to the health, tranquility or morals, or outrages the decency of the community. It is not permissible or excusable under any circumstances."

There is no ground for appellant's contention that the court should have peremptorily directed a verdict for them, or that the verdict is contrary to the evidence. The case was properly submitted to the jury under instructions which correctly advised them of the law, and as there was evidence to support the verdict, it will not be disturbed.

Judgment affirmed.