LEDBETTER *v.* STATE.

(*Nashville,* December Term, 1946.)

Opinion filed January 11, 1947.

E. D. WHITE, of Livingston, for plaintiff in error.

NAT TIPTON, ASSISTANT ATTORNEY GENERAL, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error, who will be later referred to as the defendant, has appealed from a conviction of having carnal knowledge of a female under twenty-one years of age. There are several assignments of error, but we only need to consider the contention of defendant that there is no credible evidence to sustain the verdict of the jury; that the uncontradicted evidence shows that, at the time the offense was alleged to have been committed, the female in question by her conduct had established a reputation for sexual impurity.

The record before us discloses a state of facts which leaves the Court more or less perplexed as to the justice of the verdict. Instead of the defendant pursuing the girl, Lela Smith, and by fraud and deception inducing her to submit to sexual intercourse, we find that she was in active pursuit of the defendant and appeared to be more than willing to indulge in sexual relations.

The defendant, who is a young man about twenty-two years of age, had only known Lela Smith a few days prior to the commission of the alleged wrong. She admitted in her testimony that she met him as a stranger in a "beer

joint'' in Livingston and that she was in company with a woman of unsavory reputation by the name of Padgett. This woman was the mother of two illegitimate children. In about a week after the first meeting she wrote the defendant a letter, addressing him in the most endearing terms and urging him to meet her at a certain place in Livingston on the following Saturday. The following postscript to this letter is a fair sample of its contents:

"When first I saw your pretty blond hair and your pretty blue eyes and heard your lovely voice, I laid aside all other boys and took you, darling, for my choice. That's true, believe it or not."

Before passing to a consideration of other undisputed facts, it should be stated that the girl, Lela Smith, was in her fifteenth year at this time. Following receipt of the foregoing letter, the two young people met in Livingston by prearrangement and, according to her statement, "got to talking about going to Georgia and marrying." Instead of pursuing this course, they repaired to the home of the girl's uncle, Mack Reynolds, who lived in Livingston, where they spent the night. The bed they occupied was in the same room in which her uncle and aunt slept. We are justified in concluding that they went to the home of Mack Reynolds at the suggestion of Lela Smith, because the defendant did not know she had an uncle living in Livingston. When they arrived at the Reynolds' home, she must have introduced her companion to her uncle. He testified that he asked her if he was her sweetheart and she said, "We are married."

The defendant contends that he first met the girl at the "beer joint" with the Padgett woman and after drinking beer and some whiskey, he testified, "The last thing I remember these girls got me in a car and left town with me. I did not know the girl had an uncle in Livingston

and remember nothing after they left with me until I woke up the next morning in bed with her at some man's house." He further claimed to have had no recollection of having sexual relations with the girl. This latter statement of the defendant is most incredible and the jury evidently gave it no credence, although it was doubtless true that he had been drinking.

The Padgett girl did not testify and Lela Smith fails to state as to their mode of travel to her uncle's home or how they left on the following day. It was her contention that when she told the defendant she had an uncle living in Livingston, he suggested that they go there. Conceding her statement to be true, no one will seriously contend that they could have gained entrance to her uncle's home without her intercession.

The proof is uncontradicted that she had had no previous aquaintance with this defendant, that she met him in the "beer joint" and "he came up and commenced talking;" that she knew her associate at the time was a prostitute. The defendant testified that "Every time I saw her, she was with the Padgett girl." Throughout her entire testimony she failed to state that this act of intercourse was her first experience. She at no time claimed that she loved defendant or that he was in love with her. The girl's father, who was a witness for the State, was asked no questions as to his daughter's virtue or her association with other men and boys.

It is the contention of the defendant that the conduct of Lela Smith in hanging around "beer joints" and associating with known prostitutes, as well as her manifest readiness to engage in sexual intercourse, as shown by her willingness to make her uncle's home a place of assignation, was a complete defense to the charge against him.

■ The statute under which the defendant was indicted and convicted, Code section 10786, provides "that evidence of the female's reputation for the want of chastity (where she is over fourteen years of age) . . . shall be admissible in behalf of the defendant." It is further provided, "that nothing in this section shall authorize or warrant a conviction when the female over twelve years is, at the time and before the carnal knowledge, a bawd, lewd, or kept female." The object and purpose of the Age of Consent statute was to protect the purity of young women.

■ The question before us is whether or not the violated female, who is over fourteen years of age, may be properly characterized under the law as a lewd woman in the absence of proof showing any previous act of sexual intercourse. The statute plainly provides that the defendant may introduce evidence of the female's "reputation for want of chastity" at and before the commission of the alleged offense, which we think warrants the conclusion that, if she has the reputation of being unchaste, she is to be considered a lewd character within the meaning of the statute, although there is no proof of any specific act of illicit relationship. While the language of the statute, "bawd, lewd, or kept female", impliedly indicates the necessity of showing a previous act of intercourse, it cannot be thus restricted in view of the proviso that evidence is admissible to show a reputation of "want of chastity".

In *Taylor* v. *State,* 165 Tenn. 156, 53 S. W. (2d) 377, it was held that evidence of previous acts of intercourse, where the female is under twelve, is admissible, but "evidence of the female's reputation for want of chastity is admissible only if she is over fourteen years of age." Lewdness is defined as "that form of immorality which

has relation to sexual impurity, and is generally used as indicating gross indecency with respect to the sexual relations and may or may not impute criminal indulgence." 39 C. J., p. 1035. The same authority, in referring to the term "Lewd", says: "The word 'lewd' has no statutory definition or technical meaning, but as generally understood it means indecent; lascivious; lecherous; tending to excite lustful thoughts;" etc. (p. 1035). The definition of lewdness given by Blackstone is that it may be committed "either by frequenting houses of ill fame or by some grossly scandalous and public indecency." See *Abbott* v. *State,* 163 Tenn. 384, 386, 43 S. W. (2d) 211.

In *Britain* v. *State,* 22 Tenn. 203, it was held (GREEN, J., speaking for the Court): "A master who causes or permits his slave to go about so destitute of clothing as to indecently expose the person, is guilty of lewdness and punishable by indictment."

In *State* v. *Rayburn,* 170 Iowa 514, 153 N. W. 59, L. R. A. 1915F, 640, and *Adams* v. *Com.,* 162 Ky. 76, 171 S. W. 1006, L. R. A. 1916C, 651, it is held that one may be guilty of lewdness without proof that such person had engaged in an act of illicit intercourse.

In *State* v. *Wilcoxen,* 200 Iowa 1250, 206 N. W. 260, 261, the defendant was convicted by a jury under an indictment charging seduction. The defendant offered testimony to show that the prosecutrix was given to the use of indecent language and to telling obscene stories. This testimony was excluded by the trial judge, but on appeal it was held admissible on the ground that it went to the "question of whether or not the prosecutrix was of previous chaste character." It was said by the Court, "'Chaste character' is not limited alone to unlawful sexual intercourse, but means purity of mind and innocence of heart," citing several Iowa cases.

In *State* v. *Valvoda,* 170 Iowa 102, 152 N. W. 21, 23, the defendant was convicted of the crime of seduction. The evidence tending to show the unchastity of the prosecutrix consisted of picture cards of women scantily dressed and drinking beer with an interested young man. Another showed the picture of a young man and woman in each others arms kissing and above them the words "Alone at last". The Court, in giving consideration to the defense of unchastity of the woman under the statute, said: "Her relations to defendant were such as to encourage lust and stimulate passion. The statute denouncing seduction is not intended for the protection of females of this character but to shield the chaste in mind as well as in conduct."

The offense which is defined and denounced by our statute is predicated upon both the character and reputation of the female for chastity and virtue. Proof of specific acts of intercourse by the female between twelve and fourteen years of age is admissible—*Taylor* v. *State, supra*—thus establishing a bad character for virtue, though she might have an excellent reputation; while evidence of her reputation for want of chastity (where she is over fourteen years of age) is recognized as a valid defense, even though no act of intercourse is shown. We think, as did the Court in *Jamison* v. *State,* 117 Tenn. 58, 59, 94 S. W. 675, 678, that "the idea clearly intended to be conveyed under the age of consent statute is that of unchastity, in the sense of sexual impurity." Most all of the cases construing similar statutes convey the same idea. This intention, however, in nowise conflicts with the views herein expressed that a woman may have a reputation for "sexual impurity" where there is no evidence showing a specific act of intercourse; and where she has made such a reputation, and it exists at the time of

the offense against her, it is a complete defense to an indictment under the statute.

■■ We are therefore of opinion that the defendant's contention should be sustained; that the female, Lela Smith, by her general conduct in loitering around ''beer joints'', associating constantly with well known prostitutes in public drinking places, coupled with a willingness to use her uncle's home as a place of assignation, thereby established a reputation for sexual impurity. While this opinion is confined to the facts disclosed in the instant case, it should be stated that any act or acts of immorality sought to be made available as a defense to the charge of violating the Age of Consent statute must be such as to show a want of chastity, such as conduct that is universally regarded as being in violation of public decency, good morals, and indicating sexual impurity.

The case is reversed and remanded.