# VERNON MANGRUM, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. April 22, 1968.

Certiorari Denied by Supreme Court Oct. 7, 1968.

William J. Peeler, Waverly, for plaintiff in error.

George F. McCanless, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Nashville, W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Vernon Mangrum, was indicted in a two-count indictment for rape and for violating the

age of consent statute, T.C.A. Sec. 39-3706. On his trial in Dickson County on October 21, 1966, he was convicted under the second count of violating the age of consent statute, and his punishment was fixed at three years in the penitentiary. He has appealed from this conviction.

On July 2, 1966, the prosecutrix, Linda Fay Davidson, age nineteen, and Janice Hunter, age seventeen, were spending the weekend with Mrs. Ross Stinson, age twenty-five, known in the record as Thelma Ann Stinson. Mrs. Stinson lived with her husband and four children. Miss Hunter was related to Mrs. Stinson by adoption.

On the afternoon of July 2, 1966, these three women met the defendant, who was twenty-four years of age, and his nineteen-year-old cousin, Paul Mangrum. In addition to being related, these men had married sisters. The purpose of this meeting was to make plans for that evening. Mrs. Stinson and Paul Mangrum had been together on previous occasions; the defendant had asked the prosecutrix for a date on another occasion, but she had declined. The men invited the women to go to Williamson County, where they were playing country music, but Mrs. Stinson was unable to leave home until her husband was asleep.

At about 1:00 A.M. on the following morning, the men drove to the Stinson house in a truck. The prosecutrix and Miss Hunter were expecting them. Mr. and Mrs. Stinson were asleep. Miss Hunter awoke Mrs. Stinson, and the three women got in her station wagon, leaving Mr. Stinson asleep in the house. Mrs. Stinson drove behind the truck a short distance, and both drivers stopped on a dirt road. Mrs. Stinson and Paul Mangrum

got out of their vehicles and left the other members of the group.

Mrs. Stinson had taken the keys to the station wagon, but Miss Hunter let it roll down a hill. She says this was to aggravate the boys. The defendant followed in the truck, and the prosecutrix and Miss Hunter got in it. They wanted to go driving, but he objected to Miss Hunter sitting next to him. The women then exchanged places. On his suggestion, Miss Hunter left the truck to turn off the lights on the station wagon. At that time, he drove away, leaving Miss Hunter there.

The defendant proceeded about two miles away, where he stopped. There the prosecutrix testified that he had unlawful sexual intercourse with her, forcibly and against her will. He contended that she was willing, but he was unable to have sexual relations with her because he had drunk a large quantity of beer earlier in the evening. By acquitting him under the first count, the jury found that force was not involved.

They discussed his domestic problems, and the prosecutrix urged him to return to his wife. He took her back to the station wagon. Her hair was disarranged and her appearance was unusual. In reply to a question from Mrs. Stinson, the prosecutrix told her that she had been raped, and that her pants were torn off. This was about thirty minutes after they had left the station wagon. Mrs. Stinson was angry with Paul Mangrum for showing attention to Miss Hunter and cursed both men there and again at the bridge where they had made plans for their meeting.

The women left to go to Buddy's Place, at Dickson,

fifteen to seventeen miles away. On the way to it, they say the prosecutrix fainted several times and was almost hysterical. Mrs. Stinson offered to take her to a doctor, but she said she was not hurt. They agreed not to say anything about the occurrence because it would involve Mrs. Stinson and get her in trouble with her husband.

After leaving Buddy's Place, the women drove to the Red Ace Truck Stop. The State introduced evidence by the prosecutrix, Mrs. Stinson and an employee of the station that when his employee came up to their car she screamed at him to get away; she contends his face resembled that of the defendant. Miss Hunter does not recall such an incident. The defendant objected to this testimony, as well as that of her complaint of rape to Mrs. Stinson.

The women returned to the Stinson home about daylight. On July 4, 1966, the defendant and Paul Mangrum came there again. Mr. Stinson was present at this time. The prosecutrix accompanied Paul Mangrum to the Blue Moon Cafe or Beer Tavern in his truck to get cigarettes or beer for other members of the party. As they passed his mother-in-law's home, she lay down in the truck to keep from being seen.

The prosecutrix reported the alleged crime to the sheriff that day (July 4), and her mother swore out a warrant on July 7, 1966. At the suggestion of the sheriff and an investigator for the Tennessee Bureau of Criminal Identification, she went to a doctor. She does not know the exact date of her visit, although it was necessarily several days after the events under consideration. He did not testify in the case.

The prosecutrix says she had never had intercourse previously, and that she became pregnant by the defendant.

The assignments of error are, in effect, that (1) the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendant, (2) the court erred in admitting certain hearsay testimony into evidence for consideration of the jury to the defendant's prejudice, and (3) that the trial court erred in refusing to instruct the jury pursuant to defendant's special request that the unchaste reputation of a female constitutes a valid defense to a charge of violating the Age of Consent Statute, to the prejudice of the defendant.

We consider assignment of error number (3) only, because it presents a valid and necessary reason for the reversal of this conviction.

By this assignment, the defendant contends that the trial judge erred in failing to give his special request as follows:

"DEFENDANT'S SPECIAL REQUEST
NO. 1

*(Not Given by The Court)*

I have been asked to charge you and do hereby charge you that if a woman has a reputation of being unchaste she is considered a lewd character within the meaning of Section 39-3706 even though there is no proof of any specific act of illicit relationship. Ledbetter v. State, 184 Tenn. 396 [199 S.W.2d 112]."

In his charge, the court instructed the jury:

160

\* \* \* \* \* \*

"In considering the fourth inquiry, viz, whether Linda Fay Davidson, was at the time and before the carnal knowledge, a bawd, lewd, or kept female, it is necessary that you should understand the meaning of these words.

"A bawd female is a female who keeps a house of prostitution, and conducts illicit intercourse. A lewd female is one given to unlawful indulgence of lust, either for sexual indulgence or for profit, and this lewdness may either be open, public and notorious, or committed in secret or private illicit intercourse. A kept female is one who is supported and kept by a man for his own illicit intercourse.

"Our Supreme Court has defined a lewd female, within the meaning of the statute, to be a female sexually unchaste and impure by being guilty of illicit intercourse at and before the time alleged commission of the offense charged, no matter with what secrecy said acts may have been committed, and such acts need not be open, public and notorious; for the offense denounced by the statute is predicated upon the character rather than the reputation of the female for chastity and virtue and there can be no conviction for carnal knowledge of a female who is privately bawd, lewd, or publicly notorious at the time and before the carnal knowledge or act charged.

"The question is, whether she is actually chaste and virtuous at the time of the alleged carnal knowledge. In other words, the reputation for want of chastity is not a conclusive defense, for the offense is predicated

upon character rather than the reputation of a female for chastity and virtue. If her character, that is, what she really is at the time of the alleged carnal knowledge or act charged, is pure and virtuous, and she is at the time chaste, is the question."

\*   \*   \*   \*   \*   \*

Under all the proof in the case, we think that the prosecutrix' reputation was in issue in this case. In addition to the events of the time in question, she frequented the Blue Moon Beer Tavern; she had been there the night before. At about this time, she kept company with one Donald Donegan, a married man separated from his wife; she says that this was after the occasion under investigation. There is some proof of her bad reputation for truth and veracity.

In Ledbetter v. State, 184 Tenn. 396, 199 S.W.2d 112, the Court said:

"The offense which is defined and denounced by our statute is predicated upon both the character and reputation of the female for chastity and virtue. \* \* \*; while evidence of her reputation for want of chastity (where she is over fourteen years of age) is recognized as a valid defense, even though no act of intercourse is shown. We think, as did the Court in Jamison v. State, 117 Tenn. 58, 59, 94 S.W. 675, 678, that 'the idea clearly intended to be conveyed under the age of consent statute is that of unchastity, in the sense of sexual impurity.' Most all of the cases construing similar statutes convey the same idea. This intention, however, in nowise conflicts with the views herein expressed that a woman may have a reputation for

'sexual impurity' where there is no evidence showing a specific act of intercourse; and where she has made such a reputation, and it exists at the time of the offense against her, it is a complete defense to an indictment under the statute."

We think that the defendant was entitled to a charge that where a woman has a reputation for sexual impurity existing at the time of the offense against her, it is a complete defense to an indictment under the statute. This was not covered in the general charge, and the defendant was entitled to his special request. We think that it was fundamental error to refuse the request, and that his rights were prejudiced.

For these reasons, this assignment of error is sustained, and the case is reversed and remanded for a new trial.

OLIVER and GILLIAM, JJ., concur.