**STATE of Tennessee, Appellee,**

v.

**David Clifton HOOD, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 22, 1993.

David L. Hamblen, Union City, for appellant.

Charles W. Burson, Atty. Gen., and Joel W. Perry, Asst. Atty. Gen., Nashville, Thomas A. Thomas, Dist. Atty. Gen., Union City, for appellee.

*OPINION*

TIPTON, Judge.

The defendant, David Clifton Hood, appeals as of right from his conviction in the Circuit Court of Weakley County for statutory rape, a Class E felony. The defendant was tried without a jury. He received a sentence of two years in the county jail with all but forty-five days suspended, the remainder to be served on supervised probation. He was fined five hundred dollars and ordered to receive counseling and complete one hundred hours of community service.

The issue presented on appeal is whether the trial court erred in finding that the defendant could not avail himself of the defense provided in T.C.A. § 39–13–506(b) which states "[i]t is a defense to prosecution under this section that the victim was at the time of the alleged offense at least fourteen (14) years of age and had, prior to the time of the alleged offense, engaged promiscuously in sexual penetration." The trial court concluded that previous instances of sexual penetration with "two or three" partners did not constitute promiscuous sexual penetration within the meaning of the statute. Interestingly, the case comes to us with a record reflecting that the trial court prefaced its verdict with certain legal conclusions and findings of fact. It is under this peculiar posture of the case that we conclude that the conviction should be reversed and the case remanded for further consideration.

The state's proof consisted of testimony of the victim, T.G., and the arresting officer. T.G. testified that she was fourteen years old on October 20, 1991, when she went over to a friend's house to stay for the night. Her friend's uncle, the defendant, was at the house visiting at the time. She testified that the defendant took her and his two nieces in his car to the store to buy cigarettes and soft drinks. T.G. rode in the front seat on the way while the defendant drove, and on the return trip rode in the back with the defendant while the defendant's niece drove. After telling the defendant that she was tired, the defendant told her she could lean on him but she declined. The defendant then pulled her down in the seat, unzipped her jeans and inserted his finger inside her vagina, all the

while having his hand covering her mouth. The defendant then asked her to go riding with him so that they could be alone and she refused. Later in the evening T.G. and the defendant's two nieces fell asleep in the living room while watching TV. T.G. was awakened by the defendant who again covered her mouth and digitally penetrated her vagina. The defendant asked her to go into a back bedroom so that no one could hear them but she refused.

T.G. admitted that she did not alert her friends who were present in the car and in the living room when the offenses took place, and also admitted that she had written the defendant a letter stating "what we did last night was a mistake." Officer George Shelton, investigator for the Weakley County Sheriff's Department, testified that the defendant came voluntarily to the police station and after being given *Miranda* warnings, admitted that he had digitally penetrated T.G. once in his car and once at his nieces' house, both times with T.G.'s consent.

T.G. testified that she had sexual intercourse with two different people, both teenagers, prior to the instant offense. On August 12, 1991, she had vaginal intercourse with partner A, and the next day, she had vaginal intercourse and fellatio with the same partner. On September 22, 1991, T.G. had vaginal intercourse with partner B. She denied any other instances of sexual intercourse prior to the date of the crime.

The defense proof consisted of the deposition of Philip A. Sherman, the physician who examined T.G. on October 23, 1991, and the testimony of four teenagers. Dr. Sherman's examination revealed a bruise on T.G.'s left thigh which she stated was from falling against a piece of furniture while she was attempting to get away from the defendant. The examination also revealed a non-virginal introitus and the doctor was of the opinion that T.G. had experienced multiple episodes of vaginal intercourse. He said that this finding was inconsistent with T.G.'s medical history statement to him that she had previously had intercourse only one time, that being in August of 1991. However, he admitted that one could not determine from a physical examination how many sexual part-

ners T.G. had had or how many times vaginal penetration had occurred.

The first teenager to testify was the defendant's niece and a friend of T.G. She stated that T.G. told her that she had intercourse with partner A three or four times approximately two months before the crime, but then admitted on cross-examination that she was not sure about the number of times. The witness testified that she saw T.G. and the defendant kissing in the backseat of the car and that the defendant did not have his hand over T.G.'s mouth. Later in the evening she saw T.G. go over and sit on the couch next to the defendant once the witness' mother had retired for the night. The following morning T.G. told the witness that the defendant had touched her (T.G.) and that she had not told him to stop.

The second teenager to testify stated that she was a best friend of T.G. T.G. told her about having sexual intercourse with partner A, and partner B, and also with another individual, L. She testified that after the crime occurred in October, T.G. told her that she had made up the story about having intercourse with L.

The third teenager to testify was also a friend of T.G. She stated that prior to the crime, but possibly during the same month, two boys crawled through her bedroom window when T.G. was staying with her for the night. One of the boys, S.B., had sexual intercourse with T.G. on her bedroom floor.

Finally, S.B. testified that he entered the third teenage witness' bedroom window prior to October 20, 1991, and T.G. performed fellatio on him. It was an accepted fact that the defendant was forty-two years of age at the time of the offense.

The trial court found as fact that the defendant sexually penetrated the victim, that the victim was fourteen years of age and the defendant was forty-two years of age at the time of the offense, and that the penetration was consensual. As to the victim's previous sexual activity, it found that there was "sexual activity with two separate partners" before the offense and stated that there was "evidence perhaps, or an issue was presented, that perhaps there is a third." It then con-

sidered the issue to be whether or not "these two prior partners, or this possible third partner in dispute, creates 'promiscuous sexual penetration,' as defined under the law." It acknowledged the question to be a difficult one, but it ultimately concluded "that two or three prior occasions do not constitute 'promiscuous sexual penetration,' and, therefore, the court finds that the defense has not been established and that, in fact, the proof has been beyond a reasonable doubt as to the fact that this defense was not accepted." It found the defendant guilty.

By contending that the statutory defense contained in T.C.A. § 39–13–506(b) applied in this case, the defendant focuses the initial inquiry upon the meaning of the phrase "engaged promiscuously in sexual penetration." Before the revision of our criminal code in 1989, the statutory defense applied if the victim was a "bawd, lewd or kept person." T.C.A. § 39–2–605 (1988 Supp.) (repealed 1989). The defendant claims that the defense has not changed under section 506(b) and that the intent of the legislature remains to "protect the purity of young women," citing to *Ledbetter v. State,* 184 Tenn. 396, 199 S.W.2d 112, 113 (Tenn.1947). He reasons that because the victim had three different sexual partners within the sixty-eight-day-period before the offense she is not the type of person the legislature sought to protect.

As to what constitutes the defense, we believe it changed significantly under the 1989 revision. The cases construing the bawd, lewd or kept woman defense stress the requirement of "unchastity" in the sense of "sexual impurity." *See, e.g., Jamison v. State,* 117 Tenn. 58, 94 S.W. 675, 678 (1906); *Ledbetter v. State,* 184 Tenn. 396, 199 S.W.2d 112, 114 (1947); *Mangrum v. State,* 1 Tenn. Crim.App. 155, 432 S.W.2d 497, 500 (1968). Also, the statutory defense provided for admissibility of evidence regarding the female's reputation for want of chastity, at and before the time of the commission of the alleged offense. T.C.A. § 39–3706 (repl.1975). In *Ledbetter v. State,* the Court stated that a chaste character is not limited to refraining from sexual intercourse but also means purity of mind and innocence of heart. 199 S.W.2d at 114. The Court reversed the de-

fendant's conviction of carnal knowledge of a female under twenty-one years of age finding that the prosecutrix had a reputation for sexual impurity because she loitered around beer joints, associated with prostitutes and used her uncle's home as a place of assignation with the defendant even though the record contained no proof of a previous act of sexual intercourse. *Id.* at 115.

 In contrast, the present defense requires proof of prior sexual penetration. Also, by qualifying the term "sexual penetration" with the word "promiscuously," the legislature did not intend for the defense to apply simply because the prosecutrix is sexually active. Although the statute does not define "promiscuously," we find the following definitions instructive: promiscuous—"characterized by or having numerous sexual partners on a casual basis" (*Webster's College Dictionary* 1079 (1991)); promiscuous—"characterized by a lack of discrimination; [specifically], engaging in sexual intercourse indiscriminately or with many persons" (*New World Dictionary* 1137 (2d College ed. 1976)); and promiscuity—"does not signify an isolated incident of sexual relations with one particular person, but denotes an indiscriminate grant of sexual favors to persons of the opposite sex without any requirement of love" (73 C.J.S. *Promiscuity* (1983)). Thus, promiscuity denotes not only multiple partners, but indiscriminate, casual conduct not involving love or a similar emotionally intimate aspect. We note that the Tennessee Pattern Jury Instructions define promiscuous as "consensual sexual conduct with a variety of partners but does not include a single prior act of sexual intercourse." T.P.I.—Crim. § 40.12 (1992).

Given the change in the statute, previous Tennessee case law is of little assistance in terms of application of the defense. However, we note that a sister state has dealt with a similar defense. In *Walker v. State,* 727 S.W.2d 759 (Tex.App.1987), the issue related to the trial court excluding evidence of the victim's previous sexual conduct when the statute provided a defense relative to the victim having previously engaged "promiscuously" in the prohibited conduct. The Court reversed the conviction and held that evi-

dence that the victim engaged in oral or anal intercourse on four separate occasions with at least three different individuals three or more months before the date of the offense gave rise to the statutory defense of "promiscuity." 727 S.W.2d at 761.

In *Ormand v. State*, 697 S.W.2d 772 (Tex. App.1985), the fifteen-year-old victim admitted to having consensual sexual intercourse with four men, all seventeen or eighteen years old, on several occasions before the alleged offense. She acknowledged that she had a dating relationship with only one of the men and that intercourse with two men had occurred during one day at the beach. The Court noted that the victim and the sexual partners testified to the events "without explanation." *Id.* at 773. In reversing the defendant's conviction by the trial court acting without a jury, the Court stated that because the evidence of sexual activity "was neither explained, controverted, disputed nor rebutted in any way," the conduct was promiscuous as a matter of law. *Id.* In *Walker* and *Ormand,* the absence of a statutory definition regarding promiscuity led the court to look to dictionary definitions for the common usage of such term. In this regard, we believe that the Texas cases and application of the defense provide reasonable guidance to our determination.

■ In this case, we are initially concerned by the trial court's statement that "the defense has not been established." T.C.A. § 39–13–506(b) provides a general defense which must only be fairly raised by the proof before being considered by the trier of fact and any reasonable doubt on the issue requires an acquittal. T.C.A. § 39–11–203(c), (d). As the Sentencing Commission Comments to this section provide, once the defense is at issue, "the state must prove beyond a reasonable doubt that the defense does not apply." *Id.* Thus, as opposed to an affirmative defense, the defendant need not prove it by a preponderance of the evidence. *See* T.C.A. § 39–11–204. Although the trial court stated that "the proof has been beyond a reasonable doubt as to the fact that this defense was not accepted," we have difficulty discerning what it meant given its express understanding of what constituted promiscuous sexual conduct and its specific findings.

The trial court found as fact that there was sexual activity with two separate partners, but it made no finding, one way or the other, regarding the evidence of another partner, the doctor's testimony, or the inconsistent statements by the victim about sexual activity. Instead, it focused solely on the number of partners and concluded that "two or three prior occasions" did not constitute promiscuity. However, we conclude that the trial court's interpretation of promiscuity was incomplete.

■ Promiscuity does not focus solely upon the number of sexual partners because it involves, as well, the indiscriminate, casual nature of the conduct. If the testimony regarding sexual penetration with the third partner, S.B., is believed, there was direct evidence of three vaginal penetrations and two oral penetrations with three different partners within a period of approximately ten weeks prior to the offense. There is no proof of the relationship between the victim and the partners. Also, Dr. Sherman's testimony reflected multiple vaginal penetrations. If the testimony of the third partner and the doctor were believed, we would hold as a matter of law that a reasonable doubt would exist as to these unexplained liaisons constituting indiscriminate, casual grants of sexual favors and, therefore, constituting promiscuous sexual penetration. In this vein, although three different sexual partners may not always constitute "numerous" or "many" partners for purposes of determining whether sexual conduct is promiscuous, we believe the repetitiveness of the unexplained conduct over a relatively short period of time with three different partners would be sufficient to engender a reasonable doubt regarding the promiscuity of the conduct.

■ However, the case cannot be resolved in this appeal because of the gaps in the trial court's findings which are relevant to the issue. Usually, we are confronted with a general verdict of guilt and nothing more. In such a circumstance, our review of the sufficiency of the evidence includes accrediting all of the testimony in favor of the state's position and viewing all of the evi-

dence in the light most favorable to the state, giving it the benefit of all reasonable inferences. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Yet, such a standard of review is singularly inappropriate when the record reflects that the trier of fact specifically found contrary facts or refrained from making a relevant finding. Such is the case before us. Also, as previously indicated, the trial court's findings of fact, and omissions therefrom, were based upon an incorrect interpretation and application of the defense.

In these circumstances, we hold that the conviction must be vacated. However, we conclude that the remedy is not a new trial because the trial court, as the trier of fact, remains in a position to render a verdict based upon its consideration of the evidence previously received relative to the statutory defense as we have interpreted it to be applied. The judgment is reversed and the case is remanded to the trial court.

WADE and PEAY, JJ., concur.