IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## STATE OF TENNESSEE v. TEVIAS BLEDSOE

**Appeal from the Criminal Court for Shelby County**
**No. 03-05465      Joseph P. Dailey, Judge**

---

**No. W2004-01585-CCA-R3-CD  - Filed January 19, 2006**

---

The appellant, Tevias Bledsoe, was indicted on one count of premeditated murder, one count of felony murder, one count of especially aggravated robbery, and three counts of possession of a firearm by a convicted felon.  After a jury trial, the appellant was acquitted of all charges except for the firearm possession charges. The trial court nolle prossed two of the firearm charges and sentenced the appellant to four years as a Range II multiple offender for the remaining conviction. After the denial of a motion for new trial, the appellant filed a timely notice of appeal.  On appeal, the appellant contends that the trial court committed plain error by failing to instruct the jury on the defense of duress.  We agree and reverse and remand the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Remanded**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and ALAN E. GLENN, JJ., joined.

Bill Anderson, Memphis, Tennessee, for the appellant, Tevias Bledsoe.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and William L. Gibbons, District Attorney General; Steve Jones and Amy Weirich, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In July of 2003, the appellant was indicted in a multi-count indictment on charges of felony murder, first degree murder,  especially aggravated robbery, and three counts of being a convicted felon in possession of a handgun, all relating to the death of Nathan Maroney, the victim, on September 9, 2001.

At trial, Alonzo Holt testified that in the early morning hours of September 9, he was returning home from a party near South Side High School in Memphis, Tennessee, when he heard an argument. Mr. Holt decided to investigate. From about thirty to forty yards away, Mr. Holt could see a beige sports utility vehicle parked on the side of the road near the high school. Two male individuals were standing on the sidewalk next to the passenger door. The vehicle was running and the headlights were on.

Mr. Holt saw one of the men point a gun at the other. Mr. Holt thought the man with the gun said, "Give me something or I was going to kill you" to the other man. Mr. Holt never saw the other man with the gun and heard the victim say something that sounded like "okay."

Mr. Holt knew that there was a security camera at the school and yelled out that any of their actions would be caught on camera. Mr. Holt testified that he heard the victim exclaim, "I don't know why he wants to do this, I thought we were friends." At that point, Mr. Holt claimed that both men turned to look in his direction. Mr. Holt turned and began backing away. When he glanced back over his shoulder, he saw the two men entangled in a fight, then heard the gun discharge. Mr. Holt claimed that the victim fell to the ground and the shooter began going through the victim's pockets. Mr. Holt next saw the shooter go to the truck and look at its contents. Mr. Holt testified that the shooter went back to the victim's body before getting back into the vehicle and driving away at a high rate of speed. Mr. Holt did not see the shooter take anything from the victim's person.

Mr. Holt left the scene, called the police and returned to the scene to wait for the police. He saw the victim's wallet on the ground next to his body, along with a tube of lip balm and a piece of paper. Mr. Holt was not able to identify the shooter when asked by the officers.

The victim suffered a single gun shot wound to the upper left chest and several abrasions on his head. The victim bled to death as a result of his injuries.

Once the police arrived on the scene, they located the victim's wallet. Inside the wallet, the police found two fifty dollar bills which were folded very small and hidden in pockets of the wallet not ordinarily used for storing cash. The police also found cash on the victim's person inside the watch pocket of his pants.

Kevin Maze testified that about one week prior to the murder, he and the appellant were riding around in the appellant's car when it broke down on the interstate. The car was towed, but the appellant did not have the money to get the car from the towing company. According to Mr. Maze, the appellant was upset because he had a lot of money invested in the car and was mad at Mr. Maze because he thought that Mr. Maze had the car towed.

Around 3:00 a.m. on the morning of the murder, Mr. Maze saw the appellant driving the victim's vehicle. The appellant first told Mr. Maze that he got the vehicle from a "junkie" who was going to allow the appellant to use the vehicle for a few days in exchange for money. Then the appellant told Mr. Maze that a homosexual had tried to "come on" to him, so he robbed the man of

his keys, cellular phone and money. At one point, Mr. Maze sat in the vehicle with the appellant, looking at the CDs that were inside the vehicle. The appellant wanted to park the vehicle at Mr. Maze's house, but Mr. Maze was able to convince the appellant to park the vehicle at his girlfriend, Lakesha Nelson's house just up the street.

When Mr. Maze returned home that morning, he saw the news on television and realized that the vehicle the appellant was driving belonged to the murdered victim and that his fingerprints were inside the vehicle. Mr. Maze notified the police and later led them to the vehicle.

Former Police Officer Curtis Hafley, now a member of the Homeland Security Department, testified that he was approached during a traffic stop by two men who informed him of the location of the victim's vehicle and the appellant. Officer Hafley located the vehicle backed into a spot close to a residence. After running the VIN number, Hafley learned that the vehicle was stolen and wanted in connection with a homicide.

Hafley requested backup and he and other officers knocked on the door of the residence next to the parked vehicle at around 4:00 a.m. After knocking loudly for about fifteen minutes, a phone call was made to the occupants of the residence. The appellant exited the residence and was placed under arrest. As the officers were escorting the appellant to a police car, the appellant asked the officers if he could retrieve some of his personal belongings from inside the vehicle. A female resident handed a set of car keys to the police officers. She stated that the keys belonged to the appellant.

Officer Ernestine Davison of the Memphis Police Department took a statement from the appellant on September 10. After the appellant was notified of his Miranda rights, but prior to the beginning of the statement, the appellant asked if the victim had filed a robbery report in regards to his vehicle. Officer Davison did not notify the appellant at that time that the victim was dead.

The appellant first claimed that he left the victim at the corner of Humber and Parkway and that the victim gave the appellant his cell phone so that he could call when he wanted more drugs. About thirty minutes later, the appellant changed his story, this time claiming that the victim tried to rob him. The appellant even claimed that the victim called him [after the time that the victim was found dead] in search of drugs.

After learning that the victim died, the appellant told a third version of the story, claiming that the victim tried to rob him of drugs at gunpoint. The appellant claimed in this version that he was able to get the gun and hit the victim on the head with it. When he hit the victim, the appellant claimed that the gun discharged and the victim was shot. The appellant told the officers that he threw the gun in some bushes as he drove away. The murder weapon was never located and the appellant's fingerprints were found inside the victim's vehicle.

The appellant took the stand in his own defense. He testified that he and the victim were acquaintances and met during a drug transaction. The appellant admitted that he was a drug dealer.

At the time of the incident, the appellant claimed that he had known the victim for a few weeks. The two men hung out together for most of the evening. At some point, while the two were riding in the victim's vehicle, the victim began accusing the appellant of stealing his drugs. The appellant denied stealing the drugs. At that time, the appellant claimed that the victim pulled a gun on him and demanded his drugs. The appellant jumped out of the vehicle in an attempt to leave, but the victim stopped the vehicle and continued to hold the gun on him. The appellant claimed that he was able to slap the gun out of the victim's hand and, after an exchange of blows, take control of the weapon. The appellant testified that he cocked the gun and then heard someone say that there was a camera on the school property. As the appellant turned to see who made the statement, he stated that the victim grabbed for the gun and it discharged. The appellant saw the victim fall to the ground. The appellant testified that he looked over the victim for a gun shot wound. The appellant claimed that he saw no wounds so he left in the victim's truck.

At the conclusion of the jury trial, the jury found the appellant not guilty of all crimes as charged in the indictment except for being a convicted felon in possession of a firearm. At sentencing, the trial court nolle prossed two of the "felon in possession of a firearm" charges and sentenced the appellant to four years as a Range II multiple offender for the sole firearm charge remaining.

The appellant subsequently filed a motion for new trial arguing merely that the "verdict of the jury was contrary to the weight of the evidence." The motion for new trial was denied and the appellant filed a timely notice of appeal. On appeal, the appellant argues that the trial court committed plain error by failing to charge the jury with duress.

Analysis

On appeal, the appellant argues that "the evidence clearly reveals that the defense of duress should have been included in the jury instructions" and that the trial court's failure to do so amounted to plain error under Rule 52(b) of the Tennessee Rules of Criminal Procedure. The State counters that the appellant waived the issue for failure to raise it in a motion for new trial, or, in the alternative, that the trial court's failure to instruct the jury on duress was not plain error because the evidence at trial did not support such an instruction.

A trial court has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. State v. West, 844 S.W.2d 144, 151 (Tenn. 1992). The instructions should include a charge on the defense of duress if the facts would fairly support it. As duress is not classified by our code as an affirmative defense, the defendant need not prove it by a preponderance of the evidence. State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). Where the proof, however, "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that

-4-

the defense does not apply.'" Id. (quoting State v. Hood, 868 S.W.2d 744 (Tenn. Crim. App. 1993)). The test for whether a special instruction must be given is whether "there is any evidence which reasonable minds could accept as to any such [defense] . . . ." Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975).

According to Tennessee Code Annotated section 39-11-504:

Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

(b) This defense is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion.

Tenn. Code Ann. § 39-11-504.

We note, as pointed out by the State, that the appellant failed to request a special instruction at trial and failed to raise the issue in a motion for new trial, instead choosing to raise the issue for the first time on appeal. The appellant concedes in his brief that this issue has been waived due to his failure to object to the jury instructions at trial and his failure to raise the issue in a motion for new trial. However, the appellant urges this Court to review this issue under the plain error standard.

Ordinarily, the appellant's issue would be considered waived because he failed to make a contemporaneous objection during trial and failed to raise the issue in a motion for new trial. See Tenn. R. App. P. 36(a); Tenn. R. App. P. 3 (e). When an issue is raised for the first time on appeal, it is typically waived. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). However, we may address the issue in the event there was plain error on the part of the trial court. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). Thus, if this Court is to review the claims of improper jury instructions, we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b) which provides:

An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on

appeal, in the discretion of the appellate court where necessary to do substantial justice.[1]

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See Smith, 24 S.W.3d at 282-83; State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. United States v. Olano, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); Adkisson, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. Olano, 507 U.S. at 732-37.

In the case herein we are persuaded that the appellant has successfully carried his burden of persuasion in establishing a plain error claim. First, the record is fairly clear as to what happened in the trial court. While the jury charge is not part of the transcript, it appears in the technical record. From the technical record, it appears that the trial court did not instruct the jury on duress. More importantly, consideration of the issue is necessary to do substantial justice. Looking at the evidence, we are convinced that evidence "fairly raises the defense" such that the trial court would have been obligated to submit the issue to the jury. For a statutory defense to be fairly raised by the proof "a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence," because the trial courts and appellate courts must avoid judging the credibility of the witnesses when making this determination. State v. Shropshire, 874 S.W.2d 634 (Tenn. Crim. App. 1994). After reviewing the record, we are especially persuaded that the appellant "fairly raised" the defense of duress in light of the fact that the jury, after hearing all of the evidence, acquitted the appellant of all charges except for possession of a firearm. See Culp, 900 S.W.2d at 710. The evidence, viewed in a light most favorable to the appellant established that during a struggle between the victim and the appellant, the appellant knocked the gun out of the victim's hand, picked the gun up and pointed it at the victim in an attempt to "protect himself." According to the appellant, "the gun went off when [the victim] attacked [him]." The jury's verdict in acquitting the appellant of the homicide and robbery charges appears to accredit this theory of the defense. Thus, we conclude that in order to do substantial justice a jury must be allowed to consider the defense of "duress" in assessing the appellant's guilt of the firearm possession charge. Under these circumstances we are of the opinion that the appellant has carried his burden of persuasion in convincing this Court to consider as plain error the trial court's failure

---

[1]This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well.

to instruct the jury on duress.  Therefore, we must reverse the judgment of the trial court and remand the matter for a new trial on the charge of possession of a firearm by a felon.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the trial court is reversed and remanded.

_____
JERRY L. SMITH, JUDGE