**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffery Len MELTON, Defendant–
Appellant.**

No. 02–30234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 2003.

Filed Sept. 24, 2003.

Mary C. Geddes, Assistant Federal Defender, District of Alaska, Anchorage, Alaska, for the appellant.

Timothy M. Burgess, United States Attorney; Stephan A. Collins, Assistant United States Attorney, District of Alaska, Anchorage, Alaska, for the appellee.

Before: PREGERSON, CANBY, and McKEOWN, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge:

This case arises out of Jeffrey Len Melton's conviction for being a felon in possession of a firearm and the district court's imposition of a sentence enhancement un-

der the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The district court concluded that Melton had the requisite three prior violent felony convictions to qualify for an enhancement under the ACCA. We agree and affirm.

## BACKGROUND

In 2002, federal agents arrested Melton after he arrived at a friend's house in Wasilla, Alaska to pick up a handgun that Melton had mailed from Colorado. After a search of Melton's vehicle revealed that he had a rifle in his back seat, Melton was charged in a two-count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Melton pled guilty under a written plea agreement to one of the felon-in-possession counts, and the Government agreed to dismiss the other count. The plea agreement contemplated that Melton's sentence might be subject to the ACCA, which imposes a mandatory fifteen-year minimum sentence for violators of § 922(g) who have three prior convictions for violent felonies. Melton preserved the right to argue that he was not subject to the ACCA.

In its Presentence Investigation Report ("PSR"), the United States Probation Office concluded that Melton was subject to sentencing under the ACCA because he had at least four prior felony convictions that met the definition of "violent felony" under the statute: two 1976 convictions in Alexandria, Virginia for armed robbery and statutory burglary; a 1982 conviction in Arizona for residential burglary; and a 1984 conviction in Fairbanks, Alaska for Robbery and Nighttime Burglary in an Occupied Dwelling. The PSR also listed, as part of Melton's criminal history, a 1990 conviction in Palmer, Alaska for second degree sexual abuse of a minor.

At his sentencing hearing, Melton conceded that the 1984 Fairbanks conviction qualified as a predicate felony under the ACCA. He contested the inclusion of the remaining convictions. The district court did not count the 1982 Arizona burglary as an ACCA· predicate felony because there was insufficient documentation of the conviction. The court concluded, however, that Melton still met the prerequisites for an ACCA sentencing enhancement because the other convictions qualified as violent felonies. Although the court found that either of the 1976 Virginia convictions could count as a violent felony, it counted only one of the convictions for sentencing purposes because the convictions did not occur on different occasions, as required under § 924(e)(1) of the ACCA. The court sentenced Melton to the statutory minimum of fifteen years.

## DISCUSSION

The ACCA's penalty enhancement provisions are applicable if a defendant has been convicted, on separate occasions, of three violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). A "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

*Id.* at § 924(e)(2)(B).

■ Melton challenges the district court's conclusion that his 1976 Virginia convictions for burglary and robbery, as well as his 1990 Alaska sexual abuse conviction, meet § 924(e)'s violent felony definition. In reviewing these convictions,

which we consider separately, we are guided by the Supreme Court's directive in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), that courts must use a formal "categorical approach" in determining whether a given conviction qualifies as a predicate under the ACCA. That is, we look only to the fact of conviction and "the statutory definitions of the prior offenses, . . . not to the particular facts underlying those convictions." *Id.* at 600, 110 S.Ct. 2143. If a statute fails to qualify categorically, *Taylor* permits us to look to certain documentation or judicially noticeable facts that "clearly establish" that the defendant was convicted for an offense qualifying as a violent felony under the ACCA. *United States v. Franklin,* 235 F.3d 1165, 1170 & n. 5 (9th Cir. 2000) (internal quotation marks omitted) (identifying the types of documentation permitted under the second step of *Taylor*).

## I. 1976 VIRGINIA BURGLARY CONVICTION

▇▇ Under *Taylor,* we first determine the fact of conviction under a particular statute. Where the conviction is under a state burglary statute, we compare the elements listed in that statute with those of "burglary" as defined by the ACCA. Mindful that the definition of burglary may vary from state to state, the Supreme Court has held that the term "burglary," as used in § 924(e)(2)(B)(ii), refers to "generic" burglary, meaning any offense that has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor,* 495 U.S. at 599, 110 S.Ct. 2143. If a state statute defines burglary more broadly than this generic definition and would allow a defendant to be convicted without all of the above elements being met, then the conviction fails to qualify categorically as an ACCA predicate.

*See United States v. Bonat,* 106 F.3d 1472, 1475 (9th Cir.1997).

Had the district court been presented with Melton's statute of conviction, a certified judgement of conviction, or some other documentary evidence that "clearly establishes" the burglary statute under which Melton was convicted, *United States v. Matthews,* 278 F.3d 880, 884 (9th Cir. 2002) (en banc) (internal quotation marks omitted), the analysis under the first step of *Taylor* would be straightforward. But no such documentation was offered. The record before the sentencing court consisted only of an indictment and a PSR, and the PSR did not list the statute under which Melton was ultimately convicted. Instead, the PSR relied directly on the indictment, which charged Melton with "break[ing] and enter[ing], in the nighttime," the shop and storehouse of the Temple View Garage . . . with the intent to commit larceny, in violation of Va.Code § 18.1–89. This information, although establishing the crime for which Melton was *charged,* is insufficient to establish that Melton was actually *convicted* of any particular crime or under any specific statute. *See United States v. Sandoval–Venegas,* 292 F.3d 1101, 1108 (9th Cir.2002) ("The charging papers are inadequate unless they are combined with documents that demonstrate the conviction was for the offense as charged.").

▇▇ The Government contends that the fact of conviction under § 18.1–89 is self-evident because Melton mentioned in his sentencing memorandum to the district court that he was convicted in 1976 under Va.Code § 18.1–89. This argument ignores that a lone reference in a defendant's sentencing memorandum, without more, does not qualify as the type of documentary evidence that clearly establishes the fact of conviction under a particular statute. *See Sandoval–Venegas,* 292 F.3d at 1106 (list-

ing a certified judgment of conviction or a clear, uncontested PSR as examples of permissible sources).

Further, even if the documentation were sufficient, the statutes cited by the Government do not contain elements that demonstrate Melton was convicted of generic burglary. The version of § 18.1–89 relied upon by the Government is a penalty provision for certain violations of § 18.1–88 and does not contain any elements of an offense at all. Section 18.1–88, now codified at § 18.2–90, is entitled "Entering dwelling house, etc. with intent to commit murder, rape or robbery"[1] and does contain substantive elements. However, § 18.1–88 is broadly defined, prohibiting breaking and entering not only into certain specified structures, but into ships, vessels, river crafts, and railroad cars, as well as automobiles used for human habitation. This definition exceeds the Supreme Court's definition of generic burglary. *See Taylor*, 495 U.S. at 599, 110 S.Ct. 2143 (limiting generic burglary to include only buildings or structures).

The record contains no qualifying statute under which Melton was convicted. Nor does the record contain any judicially noticeable qualifying facts that would, under the second step of the *Taylor* analysis, establish that Melton's conviction is a predicate conviction for enhancement purposes. The only documents in the record were a charging instrument stating that Melton burglarized the shop and storehouse of the Temple View Garage, and a PSR that reiterates the same information. The district court erroneously relied solely on the charging instrument's description of the crime in concluding that Melton was

convicted for a violent felony. We have consistently held that such documentation is insufficient to establish that a defendant pled guilty to the elements of the generic definition of a crime. *See, e.g., United States v. Corona–Sanchez*, 291 F.3d 1201, 1212–13 (9th Cir.2002) (en banc); *United States v. Franklin*, 235 F.3d 1165, 1172 (9th Cir.2000). The Virginia burglary conviction should not have been counted as a predicate offense for enhancement purposes.

## II. 1976 VIRGINIA ROBBERY CONVICTION

Although the ACCA does not specifically list robbery as a violent felony, the violent felony definition includes "any crime punishable by imprisonment for a term exceeding one year ... that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The government contends that Melton's 1976 robbery conviction qualifies under this provision because the Virginia definition of robbery contains as an element the use or threatened use of force.

■ Virginia does not have a robbery statute listing the elements of the offense, relying instead on the common law definition of robbery. *See George v. Commonwealth*, 242 Va. 264, 411 S.E.2d 12, 20 (1991) ("Although the punishment for robbery is fixed by statute, Code § 18.2–58, the offense is not statutorily defined, and we must look to the common law for its definition."). Virginia courts, reiterating the common law definition, define robbery as "the taking, with intent to steal, of the personal property of another, from his per-

---

1. At the time of Melton's indictment and conviction, §§ 18.1–88 and §§ 18.1–89 had already been recodified at §§ 18.2–90 and 18.2–91, respectively. This statutory substitution has no bearing on our analysis, however, be-

cause even if we refer to the statutory definitions urged by the Government, the burglary does not qualify categorically as a violent felony.

son or in his presence, against his will, by violence or intimidation." *Pierce v. Commonwealth*, 205 Va. 528, 138 S.E.2d 28, 31 (1964) (citing *Mason v. Commonwealth*, 200 Va. 253, 105 S.E.2d 149, 150 (1958)). This definition has remained constant over the years and was well established long before Melton's conviction. *See Jones v. Commonwealth*, 172 Va. 615, 1 S.E.2d 300, 301 (1939) (explaining that the definition has been "repeated in numerous decisions").

■ We recognize that in *Taylor* the Supreme Court makes specific reference to categorical analysis of a *statute* of conviction. Indeed, *Taylor* as well as the many cases applying its holding generally stem from crimes of conviction that are defined by statute. This circumstance makes our categorical analysis of Melton's Virginia robbery conviction unique, but it does not hinder our analysis. Where, as here, the state crime is defined by specific and identifiable common law elements, rather than by a specific statute, the common law definition of a crime serves as a functional equivalent of a statutory definition. This common-sense approach is consistent with Congress's emphasis on using criminal elements, as opposed to statutory labels, to trigger the ACCA's enhancement provisions. *See Taylor*, 495 U.S. at 588–90, 110 S.Ct. 2143 (explaining that Congress intended specified elements, not labels, to trigger the ACCA enhancement). It also makes sense in light of the second step of *Taylor*, which permits courts to look beyond the fact of conviction to determine the elements used to convict a defendant of a given offense. *See id.* at 602, 110 S.Ct. 2143 (permitting courts to look beyond the mere fact of conviction where a jury was actually required to find all the elements of generic burglary); *Matthews*, 278 F.3d at 884 (*"Taylor* requires that, when the government seeks to apply the

[ACCA] enhancement, it must introduce either the statutes of conviction or some other documentary evidence that 'clearly establishes' either the statutes under which the defendant was convicted *or the elements of those statutes* " (emphasis added).).

■ The record contains a valid judgment demonstrating that Melton was actually convicted of "robbery." Looking to the common law definition of robbery as it has been articulated by the Virginia courts, we agree with the Fourth Circuit that this definition of robbery, on its face, has as an element the use or threatened use of physical force. *See United States v. Presley*, 52 F.3d 64, 69 (4th Cir.1995) ("Violence is the use of force. Intimidation is the threat of the use of force. Thus, because robbery in Virginia has as an element the use or threatened use of force, [the defendant's] robbery convictions were properly used as predicates under [the] ACCA."). The district court properly included Melton's 1976 Virginia robbery conviction as an ACCA predicate.

**III.   1984 Sexual Abuse Conviction**

Finally, we review Melton's conviction for sexual abuse under Alaska Statute § 11.41.436(a), which provides in relevant part:

> (a) An offender commits the crime of sexual abuse of a minor in the second degree if ...
>
> (3) being 18 years of age or older, the offender engages in sexual contact with a person who is under 18 years of age, and the offender is the victim's natural parent, stepparent, adopted parent, or legal guardian.

"Sexual contact" is defined as:

> (i) knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast; or

(ii) knowingly causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast.

Alaska Stat. § 11.81.900(a)(57)(A).

The district court concluded that Melton's conviction under § 11.41.436(a), which was supported in the record by a valid judgment, qualified under the ACCA as a crime that is "burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* ...." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). We agree.

■ [6] Although we have not previously construed the "otherwise" clause of the ACCA in the context of sexual abuse convictions, our analyses in the United States Sentencing Guidelines ("U.S.S.G.") context provide guidance. In *United States v. Wood*, 52 F.3d 272 (9th Cir.1995), we reviewed whether a person convicted under a Washington indecent liberties law qualified as a conviction for a "crime of violence" as defined in U.S.S.G. § 4B1.2, a career offender enhancement provision that uses language identical to that of 18 U.S.C. § 924(e). Looking to the charging documents, which specified that the victim was only four years old, we concluded that "anytime an adult engages in sexual contact with a four year old child, there is always a serious potential risk of physical injury and there is always a substantial risk that physical force will be used to ensure the child's compliance." *Wood*, 52

F.3d at 275 (internal quotation marks omitted).

More recently, in *United States v. Pereira–Salmeron*, 337 F.3d 1148 (9th Cir. 2003), we considered the question of whether a prior felony conviction under Va.Code § 18.2-63, for carnal knowledge of a child between 13 and 15 years old, constitutes a conviction for a "crime of violence" under U.S.S.G. § 2L1.2. Although § 2L1.2 defines "crime of violence" differently than § 4B1.2,[2] we held that there is "no indication that the term is intended to mean something different for this provision than it does elsewhere," and resolved, consistent with *Wood*, that sexual contact with a minor inherently presents a risk of force sufficient to characterize the misconduct as a "crime of violence." *See Pereira–Salmeron*, 337 F.3d at 1153.

Other circuits have similarly found the "otherwise" clauses of the ACCA and U.S.S.G. § 2L1.2 applicable where the conviction at issue involved sexual offenses against minors. *See, e.g., United States v. Meader*, 118 F.3d 876, 881, 884 (1st Cir. 1997) (statutory rape and unlawful sexual contact with a child under the age of fourteen); *United States v. Shannon*, 110 F.3d 382, 387 (7th Cir.1997) (en banc) (sexual intercourse with thirteen year old); *United States v. Rodriguez*, 979 F.2d 138, 140 (8th Cir.1992) (lascivious acts with a ten year old); *United States v. Coronado–Cervantes*, 154 F.3d 1242, 1243–45 (10th Cir. 1998) (sexual contact with twelve year old); *see also United States v. Champion*, 248 F.3d 502, 506 (6th Cir.2001) (inducement of

---

2. "Crime of violence" is defined in the Application Notes to § 2L1.2:

"Crime of violence"—
(I) means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

(II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.
U.S.S.G. § 2L1.2, cmt. n. 1(B)(ii).

minor to engage in sexual conduct to produce sexually explicit materials "would cross the threshold for serious potential risk of physical injury").

We recognize that the statute before us encompasses all victims under the age of 18, and that some courts have hesitated in categorically equating the physical risks of sexual acts to minors of different age groups. *See, e.g., United States v. Thomas*, 159 F.3d 296, 298–300 (7th Cir.1998) (noting that "the risk of sex to 13 year old girls is much greater than the risk to 16 year olds"); *United States v. Kirk*, 111 F.3d 390, 395 n. 8 (5th Cir.1997) (observing that the question whether "sexual indecency" with a child is always a "crime of violence" is "difficult" because a nineteen year-old's consensual contact with a sixteen year old may not carry a risk of physical injury). We also acknowledge that not all types of sexual conduct necessarily present the same risk of physical injury. *See Shannon*, 110 F.3d at 387 (noting "sexual contact" under state statute did not carry the same risk of physical injury as sexual intercourse).

But we need not draw any bright lines here with regard to age or range of conduct because the Alaska sexual abuse statute contains an additional element that bears upon our analysis. The statute requires that "the offender is the victim's natural parent, stepparent, adopted parent, or legal guardian." Alaska Stat. § 11.41.436(a). This clause explicitly and implicitly excludes perpetrators that are close in age to the victim and narrows the class of offenders to those who bear parental authority over the victim.[3] Our precedents recognize that such factors as age and the authority position of the offender contribute to the risks inherent in the sexual abuse of a minor. *See Wood*, 52 F.3d at 275 (acknowledging that the "risk of violence is implicit in the size, age and authority position of the adult in dealing with a child"); *Pereira–Salmeron*, 337 F.3d at 1154 (noting as significant that sexual crimes against minors "typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures") (quoting *United States v. Velazquez–Overa*, 100 F.3d 418 (5th Cir. 1996)).

Other courts also have acknowledged the unique nature of laws that involve, or may involve, parent-child offenses. *See United States v. Vigil*, 334 F.3d 1215, 1220 (10th Cir.2003) (holding that aggravated incest constituted a crime of violence because incest is an "aggravating factor" that carries unique physical risks); *United States v. Pierce*, 278 F.3d 282, 290 (4th Cir.2002) (concluding crime of indecent liberties with a child was crime of violence because "[t]he youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control . . . ." (internal quotation marks omitted)); *United States v. Martinez–Carillo*, 250 F.3d 1101, 1106 (7th Cir.2001) (finding incest to be an aggravating factor in determining physical risk because of the nature of the parent–child relationship).

---

**3.** Alaska Stat. § 11.41.436(a) also contains an explicit requirement that offenders be 18 years of age or older. Although it would be possible for an offender, at age 18 or 19, to qualify under the statute as a natural parent, stepparent, adopted parent, or legal guardian, as a practical matter, the vast majority of parental offenders would be significantly older than the victim.

Acknowledging the special and unique dynamic of a parent-child relationship and in view of these authorities, we have no trouble concluding that Melton's crime of sexual abuse "involve[d] conduct that presents a serious potential risk of physical injury." § 924(e)(2)(B)(ii). The sexual contact, by definition, was committed against a minor. The power disparity inherent in that act, coupled with the fact that Melton was in a position of parental control over the victim, created a situation of dominance and control that brought with it an inherent risk of physical injury. Melton's sexual abuse conviction constituted a conviction for a crime of violence within the meaning of § 924(e).[4]

CONCLUSION

Although Melton's 1976 Virginia burglary conviction did not qualify as a predicate felony under the ACCA, we affirm the judgment of the district court that Melton has the requisite three prior violent felony convictions to qualify for an enhancement under 18 U.S.C. § 924(e).

**AFFIRMED.**

4. The Government directs us to the police affidavit that was submitted in support of the original criminal complaint against Melton. That document states that Melton victimized his thirteen-year-old step-daughter. Were we able to consider these facts, the victim's precise age might play a stronger role in our analysis. But we are not permitted, under the categorical approach, to consider the underlying facts of the case, *Taylor,* 495 U.S. at 600, 110 S.Ct. 2143. We believe the elements of the Alaska statute and the fact of conviction sufficiently demonstrate that Melton was convicted for a violent felony.