# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

ALFREDO LOPEZ-SOLIS, aka Alfredo
Lopez,
              *Defendant-Appellant.*

No. 03-10059

D.C. No.
CR-02-01265-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued March 11, 2004
Submitted May 12, 2006
San Francisco, California

Filed May 19, 2006

Before: Thomas G. Nelson, Susan P. Graber, and
William A. Fletcher, Circuit Judges.

Opinion by Judge T.G. Nelson;
Dissent by Judge Graber

5487

## COUNSEL

Alfred Islas, Tucson, Arizona, for the defendant-appellant.

Paul K. Charlton, United States Attorney, Christina Cabanillas, Deputy Chief, Appellate Section, and Jeffrey H. Jacobson, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

## OPINION

T.G. NELSON, Circuit Judge:

Appellant Alfredo Lopez-Solis, a citizen of Mexico, was indicted for entering the United States illegally in violation of 8 U.S.C. § 1326, with a sentencing enhancement pursuant to 8 U.S.C. § 1326(b)(2). The sentencing court subjected him to a sixteen-level sentencing enhancement under § 2L1.2 of the United States Sentencing Guidelines ("USSG") based on his prior conviction for statutory rape, a conviction the court deemed "sexual abuse of a minor," a "crime of violence" under the guideline.[1] On appeal, Lopez-Solis argues that his conviction for statutory rape was not for "sexual abuse of a minor," and therefore not a "crime of violence." For the reasons discussed below, we agree. Accordingly, we vacate

---

[1]Section 2L1.2 provides that "[i]f the defendant previously was deported, or unlawfully remained in the United States, after — (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels." USSG § 2L1.2(b)(1)(A)(ii) (Nov. 2002). The commentary to § 2L1.2 lists "sexual abuse of a minor" as a "crime of violence." USSG § 2L1.2, cmt. n.1(B)(ii)(II) (Nov. 2002). We recognize that the Sentencing Commission amended the commentary to include "statutory rape" as a "crime of violence" in 2003, after the district court sentenced Lopez-Solis. *See* USSG § 2L1.2, cmt. n.1(B)(iii) (Nov. 2003). As we discuss below, the ex post facto clause prevents us from applying the amended version of the guideline to Lopez-Solis's sentencing. Thus, we will review Lopez-Solis's sentence under the 2002 version of the guideline.

Lopez-Solis's sentence and remand to the district court for resentencing.

**BACKGROUND**

In August 2002, a grand jury indicted Lopez-Solis for illegal entry into the United States after deportation, in violation of 8 U.S.C. § 1326, with an enhancement pursuant to 8 U.S.C. § 1326(b)(2) because of his 2001 conviction for statutory rape under title 39, chapter 13, section 506 of the Tennessee Code ("section 39-13-506").[2] Section 39-13-506 criminalizes sexual penetration of a minor under 18 years of age by an individual who is at least four years older.[3]

Lopez-Solis admitted to having entered the United States illegally but reserved his right to appeal the statutory enhancement as well as any sentence imposed. The presentence report recommended a sixteen-level sentencing enhancement based on the statutory rape conviction. The district court agreed with the presentence report and subjected Lopez-Solis to the enhancement after it concluded that statutory rape was "sexual abuse of a minor," and therefore a "crime of violence" under USSG § 2L1.2. The court sentenced Lopez-Solis to 46 months in prison, with 36 months of supervised release to follow.

Lopez-Solis now appeals, arguing that his Tennessee conviction for statutory rape is not a conviction for "sexual abuse of a minor," and is therefore not a "crime of violence" under

---

[2]Tenn. Code Ann. § 39-13-506 (2001). Section 1326 of title 8 of the U.S. Code provides that a deported alien who thereafter enters the United States without consent shall be fined or imprisoned for up to two years. 8 U.S.C. § 1326. However, under § 1326(b)(2), if "removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined . . . , imprisoned not more than 20 years, or both." *Id.*

[3]Lopez-Solis pleaded guilty to the statutory rape charge, and was sentenced to one year of custody, with credit for time served, and one year of probation. He was then deported to Mexico.

USSG § 2L1.2. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's conclusion de novo.[4]

## ANALYSIS

### I.

[1] One year after Lopez-Solis was sentenced, the Sentencing Commission amended the definition of "crime of violence" under the application note to USSG § 2L1.2(b)(1)(A) to include "statutory rape," in addition to "sexual abuse of a minor."[5] Typically, we apply clarifying but not substantive amendments retroactively.[6] We cannot do so if retroactive application would violate the ex post facto clause, however.[7] As a threshold matter, then, we must determine whether we can apply the amended definition to Lopez-Solis's appeal.

[2] In contrast to the dissent, we conclude that we cannot apply the amended definition retroactively. In this context, retroactive application would violate the ex post facto clause.[8] That clause is violated when: (1) a law is "appl[ied] to events occurring before its enactment," and (2) its application "disadvantage[s] the offender affected by it."[9] Lopez-Solis's

---

[4]*United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999).

[5]The definition of "crime of violence" that existed when the district court sentenced Lopez-Solis read: " 'Crime of violence' includes . . . forcible sex offenses (including sexual abuse of a minor) . . . ." USSG § 2L1.2, cmt. n.1(B)(ii)(II) (Nov. 2002). The amended definition reads: " 'Crime of violence' means . . . forcible sex offenses, statutory rape, sexual abuse of a minor . . . ." USSG § 2L1.2, cmt. n.1(B)(iii) (Nov. 2003).

[6]*See United States v. Aquino*, 242 F.3d 859, 865 (9th Cir. 2001).

[7]*See United States v. Alfaro*, 336 F.3d 876, 882-83 (9th Cir. 2003); *United States v. Smallwood*, 35 F.3d 414, 418 n.8 (9th Cir. 1994).

[8]*See Alfaro*, 336 F.3d at 882-83 (holding that the district court's retroactive application of an amended sentencing guideline violated the ex post facto clause because the new guideline disadvantaged the offender by increasing his sentence).

[9]*Id.* at 882 (internal quotation marks omitted).

crime occurred before the amendment and, without the amendment, his crime did not satisfy the definition of "sexual abuse of a minor." Thus, we apply the 2002 version of § 2L1.2(b)(1)(A).[10]

## II.

**[3]** Section 2L1.2(b)(1)(A) provides a sixteen-level enhancement "[i]f the defendant previously was deported . . .

---

[10]We question *United States v. Asberry*'s acceptance of the Commission's designation of the amendment as merely "clarifying." 394 F.3d 712, 716 (9th Cir. 2005). While the amendment certainly made the definition of "crime of violence" clearer, it did so by making substantive changes. *See Alfaro*, 336 F.3d at 883 (refusing to characterize an amendment as clarifying, rather than substantive, because the amendment added a chemical that was not listed previously as a chemical warranting a departure). Specifically, it added a term — "statutory rape" — to the previous definition of "crime of violence." Under ordinary rules of construction, the freestanding terms in the amended definition — "forcible sex offenses, statutory rape, [and] sexual abuse of a minor" — have distinct definitions. *See United States v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir. 1989) (reaffirming "the fundamental principle of statutory construction that interpretative constructions of statutes which would render some words surplusage are to be avoided") (internal quotation marks, omissions, and brackets omitted); *United States v. Fish*, 368 F.3d 1200, 1204 (9th Cir. 2004) (applying the principle to interpret the Sentencing Guidelines). While these definitions may overlap, no definition should be completely subsumed within another. *See id.*

We are not bound by *Asberry*'s implied acceptance of the Commission's designation of the amendment as "clarifying" because *Asberry* did not have to determine if the amendment was substantive or clarifying for purposes of retroactive application. *See Asberry*, 394 F.3d at 716-17 (borrowing the 2003 amendment to § 2L1.2's definition of "crime of violence" to interpret the phrase "crime of violence" in a different section of the 2003 Guidelines); *see also Smallwood*, 35 F.3d at 418 n.8 (declining to apply an amendment to the Guidelines retroactively, even though the Commission labeled it clarifying, to avoid an ex post facto violation); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563 n.11 (9th Cir. 1998) (en banc) (stating that "[w]hile we give some deference to the Commission's conclusion [that an amendment is clarifying, not substantive], we are not bound by it").

after . . . a conviction for a felony that is . . . a crime of violence."[11] The application note to USSG § 2L1.2(b)(1)(A) defines "crime of violence" in the following manner:

"Crime of violence"—

(I)    means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

(II)   includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses *(including sexual abuse of a minor)*, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.[12]

This circuit consistently has held that statutory rape laws prohibiting sexual contact with a minor under 16 proscribe conduct constituting "sexual abuse of a minor."[13] We have never interpreted that phrase de novo with respect to a law such as Tennessee's that prohibits sexual contact with a minor

---

[11]USSG § 2L1.2(b)(1)(A).

[12]USSG § 2L1.2, cmt. n.1(B)(ii) (emphasis added). "Sexual abuse of a minor" is the only category into which Lopez-Solis's statutory rape conviction might fall because section 39-13-506 does not include as an element "the use, attempted use, or threatened use of physical force." *See* Tenn. Code Ann. § 39-13-506; USSG § 2L1.2, cmt. n.1(B)(ii)(I). Thus, his conviction is not for an offense under subpart (I) of the application note to USSG § 2L1.2(b)(1)(A), or for a "forcible sex offense" under subpart (II). *See United States v. Pereira-Salmeron*, 337 F.3d 1148, 1151 (9th Cir. 2003); *United States v. Lopez-Montanez*, 421 F.3d 926, 930 (9th Cir. 2005). Although the Sentencing Commission used the conjunction "and" between subparts (I) and (II), "we read the two subparts as presenting alternative definitions of 'crime of violence,' rather than a two-pronged test requiring satisfaction of both subparts." *Pereira-Salmeron*, 337 F.3d at 1151.

[13]*See*, *e.g.*, *Pereira-Salmeron*, 337 F.3d at 1155.

between the ages of 17 and 18.[14] As we discuss below, the age of the victim is material. The age affects whether the conduct the statutory rape law covers constitutes "abuse." Thus, this case requires us to "break new ground."[15]

## III.

We begin our analysis by defining the phrase "sexual abuse of a minor."[16] Then, we determine whether the conduct proscribed by section 39-13-506 falls within that definition.[17] We must make the latter determination categorically: the conduct punished by section 39-13-506 "qualifies as 'sexual abuse of a minor' . . . if and only if the 'full range of conduct' covered by that statute falls within the meaning of that term."[18] Under the "categorical" approach, "[w]e look solely to the statutory definition of the crime, not to . . . the underlying circumstances of the predicate conviction."[19] In this case, the "full range of conduct" that section 39-13-506 covers ranges from consensual[20] sexual intercourse between a minor aged 13 and an adult many years older to the "slight[est]" sexual penetration of a minor just under 18 by a 22 year old.[21] In order for

---

[14]We have addressed such a law under a different standard of review, as discussed below.

[15]*See Valencia v. Gonzales*, 439 F.3d 1046, 1050 (2006) (distinguishing out-of-circuit caselaw holding that statutory rape is a crime of violence because the statutes at issue in those cases pertained only to minors under 16).

[16]*See Baron-Medina*, 187 F.3d at 1146.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]Although section 39-13-506 does not include consent as an element, Tennessee courts have held that the section "contemplates circumstances in which the sexual relations are admittedly consensual." *See e.g.*, *State v. Ealey*, 959 S.W.2d 605, 611 (Tenn. Crim. App. 1997). Tennessee prosecutes non-consensual sex as rape. *See* Tenn. Code Ann. § 39-13-503(a)(2).

[21]*See* Tenn. Code Ann. §§ 39-13-506, 39-13-501(7) (2001).

section 39-13-506 to satisfy the categorical test, even the least egregious conduct the statute covers must qualify as "sexual abuse of a minor."[22] If that conduct does not qualify, then section 39-13-506 is overbroad. Thus, our categorical inquiry need focus only on the conduct falling at the least egregious end of section 39-13-506's "range of conduct": "slight" sexual penetration of a minor just under 18 by a 22 year old.[23]

IV.

Our first task is to define the phrase "sexual abuse of a minor." In cases involving non-traditional offenses, such as "sexual abuse of a minor," we define the offense based on "the ordinary, contemporary, and common meaning" of the statutory words.[24] Specifically, we "couple[ ] the dictionary definition of 'abuse' with the common understanding of 'sexual' and 'minor' . . . ."[25] The common understanding of the words "sexual" and "minor" encompasses the conduct prohibited by section 39-13-506.[26] The section prohibits "sexual penetration" of individuals who are under 18, the legal age of majority. Thus, this case turns on the definition of "abuse."

[4] Employing the dictionary definition, we have defined abuse as "misuse . . . to use or treat so as to injure, hurt, or damage . . . to commit indecent assault on."[27] The Eleventh Circuit similarly has defined abuse in this context to mean "physical or nonphysical misuse or maltreatment."[28] Both def-

---

[22]*See Valencia*, 439 F.3d at 1052 & n.3.

[23]*See id.*; *see Baron-Medina*, 187 F.3d at 1146.

[24]*See United States v. Trinidad-Aquino*, 259 F.3d 1140, 1143 (9th Cir. 2001).

[25]*See id.* (describing the approach of *Baron-Medina*, 187 F.3d at 1146).

[26]*See Baron-Medina*, 187 F.3d at 1147; *Pereira-Salmeron*, 337 F.3d at 1155.

[27]*United States v. Pallares-Galan*, 359 F.3d 1088, 1100 (9th Cir. 2004) (quoting Webster's Third New Int'l Dictionary 8 (3d Ed. 1981)) (internal quotation marks omitted).

[28]*United States v. Padilla-Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001).

initions encompass behavior that is harmful emotionally and physically. With these definitions in mind, we now compare them with the range of conduct prohibited by section 39-13-506. If the full range of conduct prohibited by the statute completely encompasses our definition of "abuse," then section 39-13-506 satisfies the categorical approach. However, if section 39-13-506 covers conduct that does not satisfy our definition, the statute is overbroad.

## V.

As discussed above, section 39-13-506 categorically proscribes consensual sexual penetration of a victim just under 18 by an individual who is 22. "Sexual penetration" includes "any [consensual] intrusion, however slight, of any part of a person's body" into the victim's body.[29] For the following reasons, we hold that the conduct the statute proscribes does not categorically constitute physical or psychological "abuse."

### A.   Physical abuse

[5] Consensual sexual penetration of an individual between the ages of 17 and 18 by a 22 year old does not necessarily involve physical "misuse," "injur[y]," or "assault" for three reasons.[30] First, physical "misuse," "injur[y]," or "assault" is not necessarily involved in the commission of the act. We recently held that a statutory rape law nearly identical to the one at issue here does not "by its nature, involve[ ] a substantial risk that physical force may be used against the [victim] . . . in the course of committing the offense."[31] Second, physical harm or injury is not necessarily a *result* of the act. While we have recognized that pregnancy and contraction of sexually transmitted diseases constitute injuries that may result

---

[29]Tenn. Code Ann. § 39-13-501(7).

[30]*See Pallares-Galan*, 359 F.3d at 1100.

[31]*Valencia*, 439 F.3d at 1049 (quoting 18 U.S.C. § 16(b)) (internal quotation marks omitted).

from sexual intercourse,[32] section 39-13-506 encompasses conduct far short of intercourse.[33] Such conduct may present no risk of pregnancy and very little risk of sexually transmitted diseases.[34] Thus, the risk of pregnancy and contraction of disease associated with sexual intercourse is not present with respect to some of the conduct that section 39-13-506 covers. Accordingly, our concern in *Asberry* with the "serious potential risks" of sexual *intercourse* to teens does not apply here.[35]

[6] Third, according to Tennessee courts, physical abuse is neither involved in nor a result of the conduct section 39-13-506 proscribes. Specifically, courts distinguish between section 39-13-506 and Tennessee's sexual assault crimes.[36] Whereas sexual assault crimes "require some form of [assaultive] contact between the accused and the victim," an individual can violate section 39-13-506 without "causing physical injury" or coming into physical contact with a person in a way regarded as "offensive or provocative."[37] Under Tennessee law, if the sexual penetration resulted from an assault, the crime committed would be rape.[38] In addition, sexual assault crimes "contemplate the lack of effective consent by the victim."[39] Section 39-13-506, however, "contemplates circum-

---

[32]*See Asberry*, 394 F.3d at 717.

[33]*See* Tenn. Code Ann. § 39-13-501(7) (defining "sexual penetration" as "any [ ] intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, [and] *emission of semen is not required*") (emphasis added).

[34]*See id.*

[35]*See Asberry*, 394 F.3d at 717.

[36]*See e.g.*, *Ealey*, 959 S.W.2d at 611 & n.5 (describing the "fundamental[ ] differen[ces]" between section 39-13-506 and sexual assault crimes).

[37]*See id.* at 611 (stating that sexual assault crimes involve "unlawful" contact, whereas section 39-13-506 does not); *see* Tenn. Code Ann. § 39-13-101(a) (defining assault).

[38]*See* Tenn. Code Ann. § 39-13-503(a)(1).

[39]*Ealey*, 959 S.W.2d at 611.

stances in which the sexual relations are admittedly consensual.''**[40]**

**[7]** Thus, based on our precedent and the Tennessee courts' interpretation of the statute, we conclude that section 39-13-506 encompasses conduct that does not meet the definition of physical "abuse."

B.   Psychological abuse

**[8]** The "slight," consensual sexual penetration of a minor just under 18 by a 22 year old also is not necessarily psychologically harmful or damaging for two reasons. First, the government has not furnished us with evidence showing such harm.**[41]** In the absence of evidence,**[42]** we refuse to assume the existence of harm.**[43]**

**[9]** Second, our prior caselaw — as well as common sense — suggest that, while consensual underage sex may be psychologically harmful to a young teen,**[44]** it may not be harmful to an older one.**[45]** For instance, in *Baron-Medina*, we held that

---

**[40]***Id.*

**[41]***See Pallares-Galan*, 359 F.3d at 1101-02 (making the obvious point that " '[a]buse' requires . . . conduct that is abusive").

**[42]**Our own review of the legislative history of Tennessee's statutory rape law uncovered no evidence that a purpose of the law was to protect minors from the psychological repercussions of underage sex. Rather, the law sought to preserve the sexual "purity," i.e., chastity, of young, unmarried women. *See Ledbetter v. State*, 199 S.W.2d 112, 113 (Tenn. 1947) (interpreting section 39-13-506's statutory predecessor); *State v. Hood*, 868 S.W.2d 744, 747 (Tenn. Crim. App. 1993).

**[43]***See United States v. Thomas*, 159 F.3d 296, 299 (7th Cir. 1998).

**[44]***See Baron-Medina*, 187 F.3d at 1147; *accord United States v. Zavala-Sustaita*, 214 F.3d 601, 605 (5th Cir. 2000).

**[45]***See United States v. Melton*, 344 F.3d 1021, 1028-29 (9th Cir. 2003) (suggesting that only in the presence of certain aggravating factors, such as incest, will a sexual encounter between a 17 year old and an adult necessarily create a "situation of [psychological] dominance and control").

consensual sexual contact with a minor under 14 necessarily involved psychological abuse because a child that young cannot understand the nature of an adult's sexual advances.[46] Our society does not criminalize or automatically consider "abusive" similar conduct with a teen who has reached the age of majority, however. We do not believe something miraculous happens in the moments separating minority from majority. To the contrary, it seems logical to conclude that a teen's capacity to understand the nature of sexual relations increases gradually as he or she grows older. Thus, an almost 18 year old typically will have a higher level of sophistication about sex and a greater ability to understand the nature and ramifications of sexual activity than a younger teen or child.[47] Consequently, as the victim's age increases, the concerns we expressed in *Baron-Medina* decrease. In the absence of evidence demonstrating psychological risks to older teens from sexual contact, we hold that section 39-13-506 does not satisfy the categorical test with respect to psychological harm.

[10] In sum, section 39-13-506 is overbroad. The "full

---

[46]187 F.3d at 1147. Similarly, in *Pereira-Salmeron*, we observed that sexual contacts between "a child under the age of fourteen" and an adult often occur as a result of the "coercive power of [the] adult['s] authority." 337 F.3d at 1154. Whatever disparity in authority there may be between a 17 year old and a 22 year old, it does not raise the same risk of psychological manipulation. *See Melton*, 344 F.3d at 1028-29.

[47]We note that Tennessee law, as well as caselaw interpreting section 39-13-506, implicitly acknowledge the distinction we make between older teens and younger teens or children. *Compare* Tenn. Code Ann. § 39-13-522 (making sexual penetration of a minor under 13 a class A felony), *with* Tenn. Code Ann. § 39-13-506 (making the same conduct with a minor 13 and over a class E felony); *see Ealey*, 959 S.W.2d at 610-11 (distinguishing section 39-13-522 from section 39-13-506 based upon the minor's capacity to give his or her "effective" — express or implied — consent to the sexual act and stating that minors 13 and older are capable of giving effective consent).

range of conduct" the statute covers includes conduct that is not necessarily physically or psychologically abusive.[48]

Our recent decision in *Afridi v. Gonzales*[49] is not to the contrary. There, we affirmed the Board of Immigration Appeals' determination that the phrase "sexual abuse of a minor" under the Immigration and Nationality Act ("INA") encompassed a conviction for the statutory rape of a victim under 18.[50] In that case, "established principles of deference to administrative agencies"[51] narrowed our review to whether the Board's determination was "contrary to the plain and sensible meaning of the [INA]."[52] Because we found the Board's "construction [of the phrase 'sexual abuse of a minor'] permissible," we had to defer to it.[53] In this case, no agency is involved. Thus, we owe no deference to agency interpretation.[54] We are faced with an entirely different task: reviewing *de novo* the district court's

---

[48]*See Pallares-Galan*, 359 F.3d at 1101-02 (holding that a state statute that "proscribes conduct that both would and would not constitute 'sexual abuse' " is overbroad).

We note that the language of the 2003 amendment to USSG § 2L1.2's definition of "crime of violence," if not the label placed upon it, lends support to our conclusion that statutory rape is not completely encompassed by the term "sexual abuse of a minor." As discussed above, free-standing terms ordinarily are interpreted to have distinct meanings.

[49]442 F.3d 1212 (9th Cir. 2006).

[50]*Id.* at 1216; *see* 8 U.S.C. § 1101(a)(43)(A).

[51]*Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005).

[52]*Afridi*, 442 F.3d at 1215 (quoting *Yeghiazaryan v. Gonzales*, 431 F.3d 678, 682 (9th Cir. 2005)) (internal quotation marks omitted).

[53]*Id.* at 1216.

[54]*See United States v. Ibarra-Galindo*, 206 F.3d 1337, 1341 n.2 (9th Cir. 2000) (rejecting the defendant's argument that the court must defer to the Board's interpretation of the term "aggravated felony" under the INA for purposes of interpreting the Sentencing Guidelines and stating that "the [Board] has no special authority to interpret or implement [ ] the Sentencing Guidelines"); *see also Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (stating that deference is owed only to an agency's interpretation of the statute "which it administers").

definition of the phrase "sexual abuse of a minor." Accordingly, we need not adopt the definition adopted by the Board to which the panel deferred in *Afridi*.

## VI.

**[11]** Because we hold that section 39-13-506 is overbroad, Lopez-Solis's sentence enhancement was proper only if the behavior for which he was actually convicted falls within the meaning of "sexual abuse of a minor" under the modified categorical approach.[55] For example, under this approach, if a defendant was actually convicted for sexual penetration of a young teen or child, we would conclude his actual conduct constituted "sexual abuse of a minor."[56] Our examination of the facts underlying a defendant's conviction, however, is limited.[57] We may examine only "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes, such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings."[58] Documents such as a police affidavit establishing probable cause or a pre-sentencing report, which "require [the court] to make factual determinations that were not necessarily made in the prior criminal proceeding," are not judicially noticeable.[59] Thus, we must first determine if judicially noticeable facts or documentation of Lopez-Solis's actual conduct exist in the

[55]*See Valencia*, 439 F.3d at 1054.

[56]*See e.g., Pereira-Salmeron*, 337 F.3d at 1155.

[57]*See Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 1260-62 (2005) (explaining that a federal court's examination of a state court conviction for sentence enhancement purposes must be limited in order to avoid "collateral trials" and to protect a defendant's Sixth Amendment right to have a jury find the facts necessary to enhance his sentence); *Parrilla*, 414 F.3d at 1043.

[58]*United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1217 (9th Cir. 2005) (internal quotation marks and brackets omitted).

[59]*Parrilla*, 414 F.3d at 1044.

record. If they do, we can then determine whether that conduct meets the federal definition of "sexual abuse of a minor" using the modified categorical approach.[60]

**[12]** Lopez-Solis's judgment of conviction is the only judicially noticeable document that the Government included in the record.[61] That document states only that Lopez-Solis pleaded guilty to statutory rape. Accordingly, the record provides no more information than the fact of Lopez-Solis's conviction. Thus, the modified categorical approach does not further our inquiry. Because the statute under which Lopez-Solis was convicted is overbroad and the record does not establish that his conviction was for conduct actually constituting "abuse," the district court erred when it punished him for conduct that does not satisfy the enhancement.[62] Thus, we must vacate his sentence and remand for resentencing.

## CONCLUSION

Tennessee Code section 39-13-506 is overbroad because it encompasses conduct that does not constitute "abuse." Absent evidence demonstrating that Lopez-Solis's conviction was for conduct actually constituting "abuse," the district court erred when it applied the 16-level sentencing enhancement.

[60]*See id.*

[61]The minutes of Lopez-Solis's federal sentencing, which recite Lopez-Solis's date of birth, are not judicially noticeable because they are not "records of the convicting court." *See Shepard*, 125 S.Ct. at 1261 (reaffirming that "respect for congressional intent and avoidance of collateral trials require" courts to confine their inquiry to "records of the convicting court"); *Valencia*, 439 F.3d at 1054 (declining to take judicial notice of the defendant's age at the time he committed the statutory rape); *see also Thomas*, 159 F.3d at 299 (same); *United States v. Sacko*, 178 F.3d 1, 5 n.2 (1st Cir. 1999) (affirming the sentencing court's judicial notice of the defendant's age since his date of birth was written in the state court indictment).

[62]*See Lopez-Montanez*, 421 F.3d at 932.

SENTENCE VACATED and REMANDED FOR RESENTENCING.

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

Our task in this case is to interpret United States Sentencing Guideline § 2L1.2. In *United States v. Asberry*, 394 F.3d 712, 716 (9th Cir.), *cert. denied*, 126 S. Ct. 198 (2005), we held that the 2003 amendment to Guideline § 2L1.2 "to list specifically 'forcible sex offenses, statutory rape, [and] sexual abuse of a minor' " as three separate kinds of "crimes of violence" was a "merely" clarifying amendment. (Alteration in original.) That holding accords with the Sentencing Commission's own interpretation of its 2003 amendment. *See* U.S. Sentencing Guidelines Manual app. C, amend. 658, Reason for Amendment 401-02 (2003) (noting that the 2003 amendment "clarifies the meaning of the term 'crime of violence' " and that the enumerated offenses, including statutory rape and sexual abuse of a minor, "are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another"). We are bound by that interpretation because "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative" except in certain situations that do not apply here. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

A clarifying amendment is to be applied retroactively where, as here, the sentencing took place before the clarifying amendment was made. *United States v. Garcia-Cruz*, 40 F.3d 986, 990 (9th Cir. 1994). Accordingly, the majority's careful attention to what type of sexual contact with a minor constituted sexual "abuse" of the minor under the former Guidelines is, in my view, beside the point. The question we should be

answering is what constitutes "statutory rape," which is an independently sufficient kind of crime of violence under the Guidelines. *See Valencia v. Gonzales*, 439 F.3d 1046, 1053 (9th Cir. 2006) (distinguishing *Asberry* on the ground that "the Commentary to section 2L1.2 of the Guidelines lists statutory rape as per se a crime of violence").

The majority contends that we cannot apply the 2003 Sentencing Guidelines to Petitioner because an ex post facto violation would result. I disagree. A clarifying amendment, by definition, creates no new law, but instead merely explains an already existing guideline. *See United States v. Chea*, 231 F.3d 531, 539 (9th Cir. 2000) (noting that there is no ex post facto violation if an amendment to the Guidelines merely clarifies its substance). As we held in *Asberry*, and as the Sentencing Commission made clear in 2003, statutory rape and sexual abuse of a minor always fell within the general classification of a "crime of violence," so any cases holding to the contrary were erroneous interpretations of the Guidelines.

The majority's reliance on *United States v. Alfaro*, 336 F.3d 876, 883 (9th Cir. 2003), is misplaced because *Alfaro* involved a substantive amendment to the Sentencing Guidelines. We have held, however, that the 2003 amendment that we consider here was "clarifying" because the Commission was just explaining its meaning in more detail. *Asberry*, 394 F.3d at 716. Indeed, the *Alfaro* court reaffirmed that a clarifying amendment—like this one—applies retroactively without resulting in an ex post facto violation. 336 F.3d at 883.

Tennessee Code Annotated section 39-13-506(a) defines the crime of "statutory rape," which is a felony, as "sexual penetration of a victim by the defendant . . . when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim." Were it to matter whether that felony categorically poses potential risks of physical injury, pregnancy, sexually transmitted disease, or psychological harm, I would hold that it

does, notwithstanding the generous definition of "sexual penetration" in Tennessee Code Annotated section 39-13-501(7). In part those potential harms arise from the statutorily required minimum age difference between the defendant and the victim.

As the majority properly notes, Defendant Alfredo Lopez-Solis pleaded guilty in Tennessee to the felony of "statutory rape." The Guidelines require no more to demonstrate that he stands convicted of a "crime of violence."

Additionally, even if we had to reach the modified categorical approach, the majority's interpretation of the judgment of conviction is incomplete whether "sexual abuse of a minor" or "statutory rape" is the appropriate category to consider. On its face the judgment shows that the indictment charged the Class B felony of "rape," but that Defendant instead pleaded guilty to "statutory rape," a Class E felony. In Tennessee, the Class B felony of "rape" requires the "unlawful sexual penetration of a victim by the defendant" to be accompanied by "[f]orce or coercion . . . to accomplish the act," or a known lack of consent, or mental or physical incapacity, or fraud. Tenn. Code Ann. § 39-13-503; *see Rivas-Gomez v. Gonzales*, 441 F.3d 1072, 1077 (9th Cir. 2006) (concluding that "all felony rape—whatever the methodology of the offender—appears to us to fall above the line that might separate aggravated from non-aggravated rape felonies—if there is such a thing"). From the judgment we know, at a minimum, that the potential for violence or harm to the victim actually was present, in the eyes of a Tennessee grand jury.

Accordingly, I would affirm the sentence.