Diana L. RAINES, Plaintiff/Appellee,

v.

SHELBY WILLIAMS INDUSTRIES, INC., Defendant/Appellant.

Supreme Court of Tennessee, at Knoxville.

July 1, 1991.

William R. Seale, Mark C. Travis, Morristown, for defendant/appellant.

Gordon Ball, Knoxville, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

In this workers' compensation case, the trial court awarded the plaintiff 50 percent permanent partial disability benefits, for a work-related back injury. The defendant contends that the trial court erred by finding (1) that it had actual notice of the plaintiff's injury; (2) that the medical proof was sufficient to establish that the plaintiff's injury arose out of and in the course of her employment; (3) that any misrepresentation in the plaintiff's employment application was not causally connected to the work-related injury and was not willful; and (4) that the deposition of a vocational expert was admissible. For the reasons stated herein, the judgment of the trial court is affirmed.

## FACTS

The plaintiff, Diana L. Raines, age 38, has an eighth-grade education and had previously been employed as a waitress, assembly line worker, and sander. She has no special education or vocational training. In 1979, while employed by Magnavox, the plaintiff suffered a sprained back for which she was awarded 5 percent permanent partial disability benefits. In October of 1983, she was employed by the defendant, Shelby Williams Industries, Inc., as a furniture upholsterer. There was no mention of plaintiff's prior back injury on her employment application with the defendant.

As an upholsterer, the plaintiff was required to lift large chairs. The trial judge found that on June 30, 1988, while the plaintiff was at work upholstering a large winged chair, "something popped in her back; pain ran down her leg and she was forced to go to the office, where the company nurse was located." She went to the company nurse to report her injury, but the nurse was on vacation. A secretary in the nurse's office gave her some pain pills, after which she returned to the production line to resume work. She complained of pain, and her supervisor permitted her to "cut strings" (apparently an easier task than lifting chairs), rather than resume her regular work.

The entire plant was closed for one week beginning the day after the plaintiff's injury. During her vacation, she visited Dr. Samuel Poisal, a chiropractor, and then returned to work on July 11, 1988. She testified that on the first day of her return to work, she told the company nurse the circumstances of her June 30, 1988 injury, and that her back was still hurting. The nurse made an appointment for her that day with Dr. Poisal. The next day, she went to David Houston McConnell, M.D., a family practitioner. When it appeared she was not improving, Dr. McConnell referred her to Dr. John H. Bell, an orthopedic surgeon. She saw Dr. Bell on July 19, 1988, and related a history of having suffered a back injury on June 30, 1988, while upholstering a chair. She was admitted to the hospital, had a myelogram and CT scan which showed two herniated or ruptured disks. Surgery was performed the next day.

As noted above, at trial on May 8, 1990, the trial court found the issues in favor of the plaintiff, and awarded temporary total disability benefits from the date of her injury to October 13, 1988, and permanent partial disability benefits based upon a 50 percent impairment to the body as a whole.

Since this cause of action arose after July 1, 1985, our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn.1989). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987).

## NOTICE OF INJURY

There is no dispute that the defendant had actual knowledge on the date of the plaintiff's injury that she was suffering from back pain. The defendant argues, however, that the trial court erred by finding that it had actual notice of an on-the-job injury. Tennessee Code Annotated, § 50–6–201 provides in part:

> **Notice of injury**—Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury....

Under the terms of the statute, workers' compensation claims may be barred unless one of three conditions is met: the employer has actual notice of an accidental injury; the employer receives written notice within 30 days after the occurrence of the accident; or reasonable excuse for failure to give such notice is made to the satisfaction of the trial court.

■ The plaintiff testified that on the day of her accident she attempted to report her injury to the company nurse, but the nurse was on vacation; when the plaintiff returned from her vacation on July 11, 1988, she told Katherine Suttles, the company nurse, that she had injured her back while picking up a heavy chair. Although Suttles was present at trial, she was not called by the defendant to testify.

Normally, the failure of a party to produce an available witness who is in a position to know the facts, and who is apparently favorable to him, gives rise to a presumption or inference, permissive and rebuttable in nature, that the testimony of such witness would not sustain the contention of such party.

*Delk v. State,* 590 S.W.2d 435, 448 (Tenn. 1979) (dissenting opinion); *National Life & Accident Ins. Co. v. Eddings,* 188 Tenn. 512, 221 S.W.2d 695 (1949). The evidence that Suttles had actual knowledge of the plaintiff's accidental injury is such that it was incumbent upon the defendant to have Suttles deny it, if in fact she had no such knowledge. "All of the elements necessary to invoke the missing witness rule are present." *Sweeney v. State,* 768 S.W.2d 253, 259 (Tenn.1989).

■ Moreover, the preponderance of the evidence of the defendant's actual notice of an injury by accident turns, in part, upon the credibility and weight to be accorded the oral testimony given by the plaintiff at trial.

Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances.

*Jones v. The Hartford Accident & Indemnity Co.,* 811 S.W.2d 516, 521 (Tenn.1991); *Beck v. State,* 779 S.W.2d 367, 368 (Tenn. 1989); *Talley v. Virginia Insurance Reciprocal,* 775 S.W.2d 587, 589 (Tenn.1989); *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315 (Tenn.1987).

The trial court found that:

On June 30, 1988, when the alleged injury occurred, the supervisor knew or had to know that some injury had occurred, or something had occurred to the plaintiff when he allowed the plaintiff to leave the production line and go to the nurse's office, and *when plaintiff came back the supervisor did not require her to lift any more chairs during that shift and merely allowed her to cut strings....* The evidence is clear that the [plaintiff was on the defendant's] production line, her supervisor and the company nurse knew that the plaintiff had some back problems.... This court finds that there is a clear inference from these facts that the defendant had actual notice.

(Emphasis added.) Implicit in the trial court's holding is a finding that the plaintiff's testimony was sufficiently credible to carry her burden of proof. "The trial judge saw and heard each witness, and was in the best position to assess their credibility and weigh their testimony." *Jones v. The Hartford, supra.* In addition, we agree that the action of the supervisor, shifting the plaintiff to lighter-duty work on the day of her injury, is circumstantial evidence of actual knowledge that the plaintiff had sustained an injury. We conclude that the evidence does not preponderate against the trial court's finding that the defendant had actual notice of the plaintiff's on-the-job injury.

### EXPERT MEDICAL PROOF OF CAUSATION

■ The defendant contends that "the trial court in this case utilized an improper standard of proof when it held that the plaintiff's injury did, *or could have* arisen out of and in the course of her employment." (Emphasis added.) It is true that the emphasized language, taken out of context from the trial court's memorandum opinion, can be viewed as a misstatement of the plaintiff's burden of proof. Of course, "causation and permanency of a work-related injury must be shown in most cases by expert medical evidence," *Tindall v. Waring Park Association,* 725 S.W.2d 935, 937 (Tenn.1987), and the plaintiff in a workers' compensation suit has the burden of proving every element of the case by a

preponderance of the evidence. *Talley v. Virginia Insurance Reciprocal,* 775 S.W.2d 587 (Tenn.1989).

It is clear from the expert medical testimony presented in this case, however, that the trial court applied the proper standard of proof. The plaintiff introduced the deposition testimony of two medical doctors as proof of causation. Dr. McConnell, plaintiff's family practitioner, testified with a reasonable degree of medical certainty that she had sustained a "work-related injury." Dr. Bell, who performed the laminectomy, testified with a reasonable degree of medical certainty that the plaintiff's injury was "related to her work." We hold that this testimony is adequate proof of causation.

## MISREPRESENTATION ON EMPLOYMENT APPLICATION

The plaintiff testified that the same company nurse to whom she had reported her on-the-job injury had filled out her pre-employment application form when she was hired by the defendant in 1983. She testified that she does not remember what she told the nurse, but as the defendant points out, the form makes no mention of her prior back injury or workers' compensation claim.

The trial court found that:

The company nurse and the plaintiff's supervisor knew that there was some error or misrepresentation on plaintiff's preemployment history; they discussed this situation at least one time, maybe more than one time, and this discussion occurred about a year before plaintiff claims she was injured, but at no time did the nurse or the supervisor ever discuss this error or misrepresentation with the plaintiff. Also, there was no medical causal connection between the false representation and the injury sustained....

The Court holds that there was no evidence that the alleged false representation was willfully and knowingly made, and the defendant waived any reliance on the false statement as the defendant knew for a long time about the preemployment medical history and did nothing but have a discussion between the nurse and plaintiff's supervisor....

■ The defendant has the burden of proving by the preponderance of evidence each element of the affirmative defense of misrepresentation.

Our prior cases on the subject of fraud and misrepresentation hold that the employer must satisfy a three-pronged test in asserting this defense: (1) the employee must have knowingly and willfully made a false representation as to his physical condition; (2) the employer must have relied thereon and such reliance must have been a substantial factor in the hiring; and (3) there must have been a causal connection between the false representation and the injury. *Federal Copper & Aluminum Co. v. Dickey,* 493 S.W.2d 463 (Tenn.1973)....

*Anderson v. Chattanooga General Services Co.,* 631 S.W.2d 380, 384 (Tenn.1981).

■ We agree with the trial court that the defendant failed to meet its burden of proof on each element of the misrepresentation defense. There is no evidence that the mistake on the application form was a willful, knowingly-false representation. Once again, the defendant failed to produce the only witness, the company nurse who filled out the form, who could have testified as to what the plaintiff had told her. The defendant's reliance on the erroneous application is negated by the fact that it allowed the plaintiff to continue lifting heavy chairs as an upholsterer for at least one year after her supervisor had actual knowledge of her pre-existing back condition. Finally, when considering whether the plaintiff's 1979 injury was causally related to the 1988 injury, Dr. Bell testified as follows:

*Q.* Doctor, if you were to assume that ... the onset of her back problems began in 1979, while she was lifting a pinball machine at the previous employment, would that cause you to alter your earlier statement any as to the causation of this injury?

*A.* No.

"Except in the most obvious cases, [a causal connection between the false representation and the injury] must be established by expert medical testimony." *Quaker Oats Co. v. Smith*, 574 S.W.2d 45, 49 (Tenn. 1978). For these reasons, we hold the defendant's misrepresentation defense has no merit.

## VOCATIONAL DISABILITY

The defendant argues that for two reasons "the trial court erred in admitting the deposition of Dr. Norman Hankins, a vocational disability expert, into the record for proof." [1] First, it argues that Dr. Hankins' deposition is inadmissible because plaintiff's counsel failed to provide seven days' prior notice of the taking of the deposition, as required by Rule 30.02(1) of the Tennessee Rules of Civil Procedure. [2]

On May 2, 1990, plaintiff's counsel served notice on the defendant that the deposition of Dr. Hankins would be taken on May 7, 1990, the day before trial, at the office of Dr. Hankins in Jonesborough, Tennessee. On May 3, 1990, the defendant was notified that the deposition had been moved to Knoxville, Tennessee. Since the trial was held in Hamblen County, and the deposition taken in the adjoining county of Knox, we agree with the defendant that the plaintiff failed to provide the required seven days' advance notice.

However, Rule 32.04(1) of the Tennessee Rules of Civil Procedure provides: "All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice." There is no evidence in the record that the defendant promptly served plaintiff's counsel with a written objection to the technical deficiency of the notice. Moreover, defendant's counsel's only oral objection was not that they could not appear, but that it was against

their "policy" to do so. The obvious purpose of the rule is to provide sufficient time so that counsel may schedule the deposition and be properly prepared. Here, there is no contention that there was a scheduling conflict. Furthermore, the defendant declined an offer of a continuance, which would have provided adequate notice. For these reasons, the defendant's objection has been waived.

Second, the defendant insists that the deposition of a vocational expert is "inadmissible hearsay" unless the proponent proves that the witness was unavailable to testify in person. Rule 32.01(3), Tenn. R.Civ.P., provides in pertinent part:

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) *that the party offering the deposition has been unable to procure the attendance of the witness by subpoena or the witness is exempt from subpoena to trial under T.C.A. § 24-9-101; ....*

(emphasis added). The defendant argues there was no proof the witness was "unavailable," as defined by the Rule, and that the witness is not exempt from subpoena to trial pursuant to Tenn.Code Ann. § 24-9-101, which provides:

24-9-101. Deponents exempt from subpoena to trial but subject to subpoena to deposition.—Deponents exempt from subpoena to trial but subject to subpoena to a deposition are:

---

1. Dr. Hankins testified by deposition taken the day before trial, that he had interviewed the plaintiff, administered several tests, read the medical evidence of Dr. Bell, and that based upon those considerations, in his opinion Raines is disabled from 67 percent of the jobs for which she was previously qualified.

2. "A party desiring to take the deposition of any person upon oral examination shall give notice in writing to every other party to the action. The notice shall be served on the other parties at least five days beforehand when the deposition is to be taken in the county in which suit is pending. *When the deposition is to be taken out of the county, at least seven days' notice shall be given.*" (Emphasis added.)

. . . .

(6) *A practicing physician, psychologist,* chiropractor, dentist, or attorney;

. . . .

(Supp.1990) (Emphasis added.)

■ In his deposition, Dr. Hankins testified that he received a Ph.D. in counseling and educational psychology from the University of Tennessee, but that he now operates a vocational assessment center in Jonesborough, Tennessee. Since there is no proof in the record that Dr. Hankins is presently a "practicing psychologist," we agree that Hankins is not a witness exempt from subpoena to trial under Tenn.Code Ann. § 24–9–101.

■ The remaining issue is whether Hankins was unavailable because the plaintiff had been unable to procure his attendance by subpoena. The record shows that at the time of the defendant's objection to the introduction of Hankins' deposition, plaintiff's counsel represented to the court that Hankins was under subpoena to this trial, but that Hankins had advised him that he had been subpoenaed earlier to another trial in Crossville on the same day and therefore could not attend this trial. The trial judge asked plaintiff's counsel to file an affidavit in support of his statement, which was not filed at that time but was later filed as a supplement to the appellate record. The affidavit does not address the question of whether Hankins was subpoenaed for this trial, nor does Hankins' deposition establish that he was subpoenaed for either trial. Accordingly, we find the record is insufficient to show that the plaintiff was "unable to procure the attendance" of Hankins by subpoena, and since plaintiff otherwise failed to prove that Hankins was "unavailable" as contemplated by Tenn.R.Civ.P. 32.01(3), we agree with the defendant that Hankins' deposition was inadmissible as proof of the extent of vocational disability.

■ The defendant argues the evidence preponderates against the 50 percent permanent disability award. We disagree.

Dr. Craig R. Colvin, a vocational expert, testified that he had interviewed the plaintiff for approximately one hour at the defendant's request. Considering this interview and her medical reports and medical history, it was Dr. Colvin's opinion that plaintiff has a vocational disability of 25 to 30 percent. Dr. Bell, who performed plaintiff's laminectomy, restricted her to occasional light lifting of 35 pounds or less, and testified that she could not return to her job as an upholsterer and will never be able to return to a job which requires lifting, bending or twisting on a repetitive basis. Dr. Bell assessed a permanent medical impairment rating of 15 percent to the body as a whole, 5 percent of which pre-existed the injury of June 30, 1988.

The plaintiff was terminated from the defendant's employment after a year's absence, in accordance with its policy. At trial, the plaintiff testified she has returned to work at a grocery store, as a cashier. The record does not reflect her current wage, but her rate of pay on the date of injury was $7.50 per hour. In *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452 (Tenn.1988), we held that the fact that:

> an injured worker is re-employed after an injury is a relevant factor to the determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury, then that is what is meant by vocational disability for the purposes of Workers' Compensation. The assessment of the extent of vocational disability is based on all pertinent factors taken together ..., including the employee's skills and training, education, age, local job opportunities, and his capacity to work at the kinds of employment available in his disabled condition.

*Id.* at 459. Despite her new employment, the proof clearly demonstrates the plaintiff is incapable of performing a substantial

number of jobs for which she was formerly qualified.

Considering the physical limitations of the plaintiff's injury, her limited education and training, her relative youth and employment experience, and the vocational proof, we conclude that the evidence does not preponderate against the trial court's judgment of 50 percent permanent disability benefits. Accordingly, the judgment of the trial court is affirmed. The plaintiff's motion for frivolous appeal is denied, and costs are assessed against the defendant.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.