# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 29, 2006

## STATE OF TENNESSEE v. WILLIAM CLAY BOHANAN, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2004-D-3048     Steve Dozier, Judge**

**No. M2006-00360-CCA-R3-CD - Filed March 2, 2007**

The Appellant, William Clay Bohanan, Jr., was convicted by a Davidson County jury of felony escape and vandalism of property valued under $500, a Class A misdemeanor. On appeal, Bohanan raises two issues for our review: (1) whether the trial court erred in failing to charge the jury on the defenses of duress and necessity; and (2) whether the evidence was sufficient to support the convictions. Following review, the judgments of conviction are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant, William Clay Bohanan, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Hugh Ammerman and Katrin Miller, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On June 20, 2004, the Appellant was an inmate of the county jail at the Criminal Justice Center in Nashville where he was awaiting trial for two counts of felony murder, one count of aggravated arson, and one count of arson. During the morning shift change on June 20th, it was discovered that three inmates, one of which was the Appellant, were missing from their assigned cell. In the cell, correctional officers found three orange jumpsuits stuffed with newspapers, as well as a drawing of the ceiling area going into a "mechanical room" found beneath the Appellant's bed. Additionally, a note was found under the Appellant's pillow which stated he was sorry but that he was innocent and the police were corrupt.

Upon receiving notification of the apparent escape, Sergeant Randy Porter of the Davidson County Sheriff's Office went outside to conduct a "perimeter check" of the premises and discovered sheets hanging from the roof. Upon securing the roof area, Porter found inmate-issued orange shoes and laundry bags stuffed with towels. On the ground below the sheets, he found jumpsuits and plastic bags. The investigation eventually revealed that the inmates had escaped from their cell by crawling through the ceiling in the bathroom. The group then made a hole in a block wall in order to gain access to the "mechanical room" before getting into the "air handling units" or vents, which permitted access to the roof. As a result of the escape, the bathroom ceiling, the wall between the bathroom and the "mechanical room," and the grating on the air unit in the "mechanical room" were damaged. The total cost to repair the damage caused was $1,612.

Officer Ryan Lockwood of the Metro Police Department was assigned to investigate the escape of the three inmates. After interviewing the Appellant's girlfriend twice, Officer Lockwood was directed to search for the Appellant at the "park or recreational area on Hamilton Creek Road." On June 22, 2004, Officer Jimmy Upchurch, a K-9 officer, was assigned to assist in the search. He began searching in an area of the park which had heavy vegetation and lots of large boulder type rocks. Approximately ten minutes into his search, the dog alerted, and the Appellant was found hiding between some large boulders. Following his apprehension, the Appellant was returned to the jail.

On December 10, 2004, a Davidson County grand jury returned a two-count indictment against the Appellant charging him with felony escape and vandalism of property over $1000. A jury trial commenced on October 31st. At trial, the Appellant's defense centered around his assertions that he was forced to escape to avoid mistreatment by police. According to the Appellant, he was in constant fear, partly because of prior run-ins with law enforcement in which he asserted that police brutality had occurred. According to the Appellant, he was also threatened and harassed during his current incarceration prior to the escape. Following the presentation of evidence, the Appellant was convicted of felony escape and the lesser included offense of vandalism of property under $500. A sentencing hearing was held on December 9, 2005, after which the trial court imposed concurrent sentences of two years for the escape and eleven months and twenty-nine days for the vandalism. Additionally, as statutorily required, the court ordered that the sentences be served consecutively to the life sentence which the Appellant was serving. The trial court subsequently denied the Appellant's motion for new trial, and this timely appeal followed.

**Analysis**

On appeal, the Appellant has raised two issues for our review. First, he argues that the trial court erred in refusing to instruct the jury on the defenses of duress and necessity. Second, he asserts that the evidence is insufficient to support his convictions for escape and vandalism.

**I. Failure to Charge Duress and Necessity**

First, the Appellant asserts that the trial court erred in refusing his request to charge the defenses of duress and necessity to the jury. Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. CONST. amend VI; Tenn. Const. art. I, § 6; *see also State v. Bobo*, 814 S.W.2d 352, 356 (Tenn. 1991); *Willard v. State*, 130 S.W.2d 99 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). Consequently, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30.

Our law requires that all elements of each offense be described and defined in connection with that offense. *State v. Cravens*, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. *Sandstrom v. Montana*, 442 U.S. 510, 527, 99 S. Ct. 2450, 2461 (1979); *see also State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997).

When the evidence in the record fairly raises or supports the existence of a defense, the trial court is compelled to instruct the jury on the issue. *Manning v. State*, 500 S.W.2d 913, 915-16 (Tenn. 1973). Because duress and necessity are general defenses, as opposed to affirmative defenses, if the evidence fairly raises either defense, the trial court must submit the issue to the jury. T.C.A. § 39-11-203(c) (2003); *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994) (citing *State v. Hood*, 868 S.W.2d 744, 748 (Tenn. Crim. App. 1993)). Whether the evidence has raised a defense and, therefore, requires a jury instruction depends upon an examination of the evidence in the light most favorable to the defendant because the trial courts and appellate courts must avoid judging the credibility of the witnesses when making this determination. *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1994). Where the proof "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that the defense does not apply.'" *Culp*, 900 S.W.2d at 720. We review the trial court's instructions to the jury *de novo* with no presumption of correctness. *State v. David Wayne Smart*, No. M2001-02881-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 13, 2003); *see also State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001).

At trial, the Appellant testified that he had previously experienced multiple run-ins with law enforcement and that long-standing problems existed which caused him to fear for his safety during his current incarceration. According to the Appellant, he was attacked and viciously beaten by officers in 2003 when he was attempting to assist the officers in resolving a dispute at a club. The Appellant filed a report with the Internal Security Division as a result of the incident. The Appellant testified that police threatened him during the subsequent trial that he would be placed "under the jail" unless he signed a retraction of the complaint.

The Appellant also testified about an alleged incident of abuse which occurred when he was arrested on the felony charges for which he was incarcerated when he escaped. According to the

Appellant, large vehicles filled with police officers in gas masks, who were brandishing army rifles, arrived to arrest him and continually taunted him with threats of what they would do when they found him while the Appellant hid in his attic. He testified that this caused fear and that he felt he might be killed. He stated that once the police found him, an officer stomped him so hard that he fell through the ceiling into the bathroom below, after which he was attacked and viciously beaten by officers.

The Appellant also contends that during his current incarceration at the jail, certain officers threatened that he would be placed in the general population of the jail. He further stated that the officers indicated that they would "look the other way," thus, allowing the violent offenders to injure or even kill him. According to the Appellant, jail personnel taunted him and threatened him, in addition to depriving him of medical care and denying him access to legal research. He said these actions, coupled with his past encounters with law enforcement, caused him duress, and he felt that he had to escape to protect himself. He stated that he felt it was futile to complain, as he would be complaining to the very people who were committing the offenses. According to the Appellant, he intended to contact a law enforcement officer he knew in Alabama to seek guidance about the situation following his escape.

The trial court refused to charge the defenses of duress and/or necessity based upon *Culp*, specifically finding:

> . . . [W]hen you compare the factors in *Culp*, . . . which, obviously is an escape case, to the facts here, they are completely different. Those facts that I'm talking about leading up to the potential present, imminent, impending harm of death or serious bodily injury, as to induce a well-grounded apprehension of death or serious bodily injury. . . . I don't have any of that proof. I have vague references by [the Appellant] of what he thought could happen in jail. . . . I have testimony from [the Appellant] that people - - or at least one or more sheriff's deputies sang lullabies. But I don't have the proof for me that . . . has been discussed and acknowledged here by the defense attorney that these factors just aren't met. . . . I'm here to follow the law and under this case and the facts that I have before me, I do not find that these defenses have been fairly raised. I don't have any administrative personnel here saying what complaints have been made, how continued complaints would be futile. I don't have the immediate reporting after the threats have been withdrawn. I don't find that I have proof about their being present, imminent impending well-grounded apprehension of death or serious bodily injury, based on the facts that I have here before me.

**a. Necessity**

The defense of necessity considers conduct to be legally justified if: (1) the person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness,

the harm sought to be prevented by the law proscribing the conduct. T.C.A. § 39-11-609 (2003). The Sentencing Commission Comments to this section state that the defense of necessity is applicable in exceedingly rare situations where criminal activity is "an objectively reasonable response to an extreme situation." T.C.A. § 39-11-609, Sentencing Comm'n Comments. This court has held that in order for a defendant to be entitled to the defense of necessity, he "must show an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm." *State v. Watson*, 1 S.W.3d 676, 678 (Tenn. Crim. App. 1999) (citing *State v. Green*, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995)). In *State v. Green*, this court ruled that because the statute codifies the common law, common law distinctions between the defenses of duress and necessity are instructive. *State v. Green*, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998). In particular, the common law indicates that:

> Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity.

*Id.* (quoting *United States v. Bailey*, 444 U.S. 394, 409-10, 100 S. Ct. 624, 634 (1980)). The defense of necessity is, thus, generally only available where nonhuman acts prompt the illegal action. *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998); *see also State v. Polston*, No. W2003-02556-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 19, 2004).

In this case, the Appellant failed to present any evidence that there were any threats caused by physical forces outside his control which motivated his escape from the jail and the resulting damage caused. Even accepting the Appellant's allegations as true, all the conduct and threats of future conduct complained of by the Appellant were the result of human action. Thus, it was not error for the court to refuse to instruct the jury on the defense of necessity.

### b. Duress

Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending, and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. T.C.A. § 39-11-504 (2003). The threatened harm must be continuous throughout the time the act is being committed and must be one from which the person cannot withdraw in safety. *Id.* Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. *Id.* This court has specifically held that the

compulsion must be immediate and imminently present and of such nature to produce a well-founded fear of death or serious bodily injury. *State v. Robinson*, 622 S.W.2d 62, 73 (Tenn. Crim. App. 1980). There must be no reasonable means to escape the compulsion to commit the offense. *Id*.

Following review, we agree with the trial court that the evidence, even considered in the light most favorable to the Appellant, did not raise the defense of duress. He failed to present any evidence that he was forced to escape from the jail in order to prevent his immediate death or serious bodily injury. Accepting the Appellant's testimony as true, the complained of behavior, which included threatening to place the Appellant in the general population, denying him access to legal research and medical treatment, commenting on his pending charges, and singing lullabies, does not establish a definite threat to the Appellant's immediate safety. Apparently, these alleged comments had been occurring for some time, and the Appellant testified to no one specific event which indicated that the occurrence of the threat was imminent. As such, the possible complained of harm, the threat of being placed in a different pod with violent offenders, was not present, imminent, or impending and was not of such a nature to induce a well-grounded apprehension of death or serious bodily injury if he had not escaped. Thus, the Appellant was not able to identify a specific immediate threat of harm that motivated his escape.

Moreover, there is no indication in the record that the Appellant filed any type of complaint regarding the behavior. *See Culp*, 900 S.W.2d at 710-11. While the Appellant testified that he thought complaining would be futile, the record does not support that conclusion. According to jail personnel, the Appellant filed a complaint on behalf of another prisoner, and the situation was corrected. Thus, the record does not establish the futility of seeking an administrative remedy. Moreover, the Appellant failed to report his escape to the proper authorities when he reached a position of safety away from the immediate threat. *See Id*. at 711. The Appellant was apprehended three days after his escape after a full scale search was conducted. Clearly, he was not making any attempt to turn himself in to the proper authorities. Thus, the defense of duress is not fairly raised by the proof, and the trial court did not err in refusing to so instruct the jury.

## II. Sufficiency of the Evidence

The Appellant also asserts that the "evidence introduced at trial was insufficient as a matter of law to allow the jury to arrive at a verdict of guilty beyond a reasonable doubt as to the counts upon which [the Appellant] was sentenced." In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620,

623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant first challenges his conviction for felony escape in violation of Tennessee Code Annotated section 39-16-605 which provides that "[i]t is unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution . . . ." T.C.A. § 39-16-605(a) (2003). The offense of escape is a Class E felony if the person was being held on felony charges. *Id*. at (b)(2). The Appellant asserts that the evidence is insufficient to support this conviction because the proof establishes that, although he left the jail where he was being held on felony charges, he left under duress in order to protect his own safety.

We find the Appellant's argument to be misplaced. Initially, we are constrained to note that, as we concluded *supra*, the defenses of duress or necessity were not fairly raised by the evidence. The record establishes that the Appellant was incarcerated at the Criminal Justice Center on June 20, 2004, awaiting trial on multiple felony charges. He, along with two other inmates, left the jail by climbing into the ceiling over the bathroom, going through a wall into the "mechanical room," entering the air vents, and exiting onto the roof of the jail. From the roof, the Appellant and his fellow escapees used sheets to descend to ground level and proceeded to leave the premises without permission. Further, the Appellant did not return to the jail until he was captured by police three days later. Indeed, as noted, the Appellant himself admits that he left the jail while incarcerated on felony charges. This evidence is more than sufficient to support the Appellant's conviction of felony escape.

The Appellant also challenges his conviction for misdemeanor vandalism. Our criminal code states that "[a]ny person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty" of vandalism. T.C.A. § 39-14-408(a) (2003). Specifically, the Appellant asserts that "the State failed to prove that the [Appellant] ever vandalized anything that the State asserted was vandalized in this case. Additionally, the State failed to prove that the items that were alleged to have been repaired were only repaired to their original condition and not improved upon, to prevent future escapes. Finally, the State failed to prove, essentially, that any of the vandalism was caused by anyone specifically, especially by the others who escaped that same day."

The evidence presented at trial established that the damage to the jail facility, both real and personal, occurred during the escape. Testimony was given that the metal ceiling in the bathroom was pried back, a hole was created in the wall between the bathroom and the "mechanical room," the door and filter on the air unit in the "mechanical room" were bent, and the vents leading to the roof were pried back. According to testimony given, the cost to repair this damage was $1612. The damage was discovered shortly after the escape and various items used in the escape were found in areas which were damaged. Thus, it was reasonable for a jury to infer that the damage was done in order to facilitate the escape from the jail facility.

The Appellant's argument that the State failed to prove which of the three escapees caused the damage is misplaced, as a person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct or by the conduct of another for which the person is criminally responsible. T.C.A. § 39-11-401(a) (2003). Tennessee Code annotated section 39-11-402(2) (2003) provides that an appellant is criminally responsible for the actions of another when, "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense." Specifically, when an appellant is aware of the intentions of his co-defendants and proceeds to aid or attempt to aid in the endeavor, the appellant is responsible for all natural and probable consequences of his co-defendant's actions during the commission of the crime. *State v. Richmond*, 90 S.W.3d 648, 654 (Tenn. 2002). Thus, it is immaterial which of the three escapees caused the damage to the jail premises as all were actively engaged in the escape and were, therefore, each responsible for the actions of the others. Likewise, the Appellant's argument that the premises were repaired to a better condition than prior to the vandalism is immaterial. Clearly, damage was done to the building in the course of the escape. While the jury rejected the State's asserted value of the damage, it is clear that the jury obviously accredited the testimony that damage of less than $500 occurred. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the Appellant's judgments of conviction for felony escape and misdemeanor vandalism are affirmed.

_____
DAVID G. HAYES, JUDGE